No. 76,702

STATE OF KANSAS, *Appellee*, v. JOSHUA HASKINS, *Appellant*.

(942 P.2d 16)

Opinion filed July 11, 1997.

*James Brent Getty*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by Joshua Haskins from the sentence imposed after his plea of guilty to aggravated battery contrary to K.S.A. 21-3414(a)(1)(A), a severity level 4 person felony. The battery was on his 2-month-old daughter who received broken ribs, a broken wrist and hand, and injuries to her face and eye.

At issue is the following question: When the parties make a mutual mistake as to the defendant's criminal history score prior to and at the entry of a guilty plea, can the trial court impose a sentence on the more serious criminal history score discovered after the guilty plea but prior to sentencing?

Here, the defendant pled guilty to one count of aggravated battery. At the time of the plea, both the defendant and the State thought the defendant's criminal history score was F, which carries a presumptive prison sentence of 52 to 59 months. The defendant actually had a criminal history score of C, which was subsequently revealed in the defendant's presentence investigation (PSI) report. All parties agree that C is the proper criminal history score. Based on the defendant's criminal history score of C, the trial court sentenced the defendant to a 71-month term of imprisonment and a post-release supervision term of 36 months.

The defendant appeals, contending that the State failed to abide by the plea agreement when it informed the court that the defendant's criminal history score was C instead of F. The parties mistakenly thought a prior juvenile adjudication was not a person felony when, in fact, it was. The defendant recognizes that the Kansas sentencing guidelines state that "the prosecutor shall not . . . make any agreement to exclude any prior conviction from the criminal history of the defendant." K.S.A. 21-4713(f). Further, K.S.A. 21-4707(c)(4) provides in pertinent part: "Any such prior convictions discovered after the plea has been accepted by the court shall be counted in the determination of the criminal history of the offender." However, the defendant argues that a juvenile adjudication is not a "conviction" and, thus, a prosecutor can plea bargain to mischaracterize a juvenile adjudication, which would have been a person felony if committed by an adult, as a nonperson felony. As such, the defendant claims that the prosecutor entered into a valid plea agreement promising to agree that the defendant's criminal history score was F. Claiming that the prosecutor violated the plea agreement, the defendant requests that we vacate the sentence and remand for resentencing as if he had a criminal history score of F.

The first question is whether a plea agreement between the State and the defendant existed at all. The defendant pled guilty and filed with the court a document entitled Defendant's Acknowledgement of Rights and Entry of Plea. It is from this document that the appellate defender concludes there is a plea agreement. Paragraph 2 of the document sets forth the plea negotiations. It states, "Defendant pleads guilty *without a recommendation* from the State. Defense gives notice of its intent to file a motion for downward departure." (Emphasis added.)

Paragraph 4 of the Defendant's Acknowledgement of Rights and Entry of Plea sets forth the defendant's understanding of what his counsel and the court had informed him concerning the penalties that could be imposed. The defendant, both in the signed document and on the oral record, was informed the possible sentence ranged from 38 months to 172 months and a $300,000 fine. He was also informed that the penalty for a criminal history score of F is a minimum of 52 months to a maximum of 59 months. The defendant bases his belief that the State promised to agree to a criminal history score of F in a plea agreement in paragraph 4 of the Defendant's Acknowledgement of Rights and Entry of Plea form.

There was no plea agreement. The testimony at trial was that the State had made no plea agreement. The defendant's argument that the State agreed to fix the defendant's criminal history score at F has no support in the record. The record is clear that the defendant pled without a deal, albeit he pled thinking he had a criminal history score of F. The State did not agree to fix the defendant's criminal history score of F or to give him any benefit in exchange for a plea of guilty. Paragraph 4 of the Defendant's Acknowledgement of Rights and Entry of Plea, relied upon by the defendant to support a plea agreement, only indicates what the defendant's sentence would be if the defendant's criminal history score is, in fact, F.

Obviously, it would be better if the preprinted "fill-in-the-blank" plea form included the fact that any prior conviction discovered after the plea has been accepted by the court *shall* be counted in determining criminal history. Nonetheless, since there was no plea

agreement, the State did not violate a plea agreement when it informed the trial court that the defendant actually had a criminal history score of C instead of F. Further, even if a plea agreement had been made, the defendant knew the court was not bound by any agreement.

The next question is whether the defendant knowingly entered into a guilty plea, even though he (and the State) were mistaken about his criminal history score at the time of the plea. At trial, the defendant argued that he did not have full knowledge of his criminal history score when he pled guilty.

The trial court held that the defendant knowingly entered a guilty plea, even though the defendant was mistaken about his criminal history score at the time he entered the plea. The trial court based this conclusion on the following findings of fact. The trial court found the defendant was aware that he could be sentenced to 172 months in prison with a $300,000 fine when he pled guilty. The trial court also ruled that the defendant knew when he pled guilty that the sentencing court would not be bound by any plea agreement or recommendation. Further, the trial court found that the defendant knew his sentence was going to be fairly substantial. Finally, the court ruled that the defendant was not a stranger to the judicial system.

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

The trial court's findings of fact are supported by substantial competent evidence. The maximum prison term and maximum fine for the charged crime were listed on the Defendant's Acknowledgement of Rights and Entry of Plea form, which the defendant signed. At the plea hearing, which was conducted by Judge Lahey, the court told the defendant, "[Y]ou understand the judge who

sentences you will be Judge Wilbert and *he is not required to follow any plea agreement* or any recommendation by your lawyer to depart from what the guidelines sentence is in this [case] . . . . The judge can make his own decision and sentence you to whatever prison sentence he [feels] is appropriate under the law . . . ." (Emphasis added.) The defendant said he understood this. Finally, the fact that the defendant was·not a stranger to the judicial system is supported by evidence that the defendant's PSI report indicated the defendant had two prior juvenile adjudications. As such, the trial court's findings of fact are supported by substantial competent evidence. These findings are sufficient to support the trial court's conclusion of law that the defendant knowingly entered into a guilty plea, even though he was mistaken about his criminal history score at the time of the plea.

We hold that the defendant did not have an agreement with the State concerning his criminal history score and that the trial court did not err in sentencing the defendant under a criminal history score of C. The State is prohibited by law from entering into a plea agreement that excludes prior convictions from the criminal history of a defendant. K.S.A. 21-4713(f). Prior convictions discovered after a plea has been accepted are properly considered in a defendant's criminal history at sentencing. K.S.A. 21-4707(c)(4). The legislature has also clearly expressed an intention that juvenile adjudications for a residential burglary are to be counted as a person felony. K.S.A. 21-3715(a); K.S.A. 21-4711(d)(1). We conclude the State is not obligated to insist that the defendant be sentenced under a criminal history score of F, and that, in any event, the trial court would be required by statute to sentence the defendant under a criminal history score of C. We further hold that the defendant knowingly entered his guilty plea, even though he was mistaken about his criminal history score.

Affirmed.