No. 96,820

STATE OF KANSAS, *Appellee*, v. CLIFTON LANE SCHOW, *Appellant*.

(197 P.3d 825)

Opinion filed December 12, 2008.

*Reid T. Nelson*, of Capital and Conflicts Appellate Defender Office, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Clifton Lane Schow seeks review of the Court of Appeals' decision affirming the district court's denial of Schow's motion to withdraw his plea and affirming the district court's ruling on Schow's criminal history challenge. *State v. Schow*, 37 Kan. App. 2d 941, 161 P.3d 222 (2007). We reverse, vacate the sentence, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Schow was originally charged with one count each of criminal threat and violation of a protective order. He entered into a plea agreement with the State in which he agreed to plead guilty to the criminal threat count, a severity level 9 felony. In return, the State agreed to dismiss the second count and to recommend the mitigated sentence in the applicable grid box and "probation per LSIR at level of at least [residential] center if eligible under guidelines." Further, Schow's sentence was to run consecutive to a prior misdemeanor conviction on which probation had been revoked. In the preprinted plea agreement form the agreed disposition was indicated as probation, "if eligible."

At the August 5, 2005, plea hearing, defense counsel advised the court of additional discussions that had occurred during plea negotiations that had not been specifically noted in the written agreement. Schow was attempting to get his probation reinstated in the prior misdemeanor case so that he could "do both sentences at the Residential Center," *i.e.*, serve the sentences from the prior misdemeanor and the current felony cases on probation at the Residential Center. According to defense counsel, the prosecutor on the current case had indicated a willingness to assist with Schow's efforts to get probation reinstated in the misdemeanor case. The prosecutor did not contest the accuracy of defense counsel's recitation.

Prior to accepting Schow's plea, the district court advised Schow that the minimum sentence for a level 9 felony would be 5 months and the maximum sentence would be 17 months. Further, the court advised that, unless Schow was a criminal history A or B, his sentence "would be presumptive probation ordinarily." After being

advised by defense counsel that the parties believed Schow to be a criminal history D, the court stated, "If you are a D, then the sentence would be 11 months on the low side, 13 months on the high side, *still presumptive probation.*" (Emphasis added.) The judge then clarified that he had no control over what the other judge assigned to the misdemeanor case might do. After ascertaining that Schow had been afforded time to discuss the matter with his attorney, the district judge further explained:

"THE COURT: I don't have a lot of discretion in a felony sentencing like I do in misdemeanors. So if you are a D, you are pretty much assured of 11, 12 or 13 months and getting probation initially because that will be what the sentencing guidelines tell me to do. The only fly in that ointment is that if Judge Phalen wouldn't put you on probation [in the misdemeanor case], then obviously you won't be able to do my probation. That could create some problem. And I don't know how to figure that out ahead of time."

After the foregoing recitation, defense counsel asked for time to speak with Schow to explain what the court had just said. Following that discussion, defense counsel asserted: "He understands." Schow then said, "Yes, your honor, that is fine."

Ultimately, the district court accepted Schow's guilty plea to criminal threat and dismissed the remaining count of the complaint. The court set sentencing for September 22, 2005.

A presentence investigation (PSI) report was prepared and, according to the face of the document, was submitted on September 8, 2005. The PSI reflected a criminal history category B, rather than D, because three prior person misdemeanors were aggregated and scored as a person felony.

Just prior to the sentencing hearing, Schow filed an objection to the criminal history reflected in the PSI. He specifically denied the validity of two misdemeanor domestic battery convictions out of Leon County, Florida, which were listed as items 4 and 5 on the schedule of prior convictions. The PSI indicated that the source of the information on the challenged convictions was a prior PSI, apparently from a 1997 Johnson County case. The court granted a 1-week continuance to permit the parties to retrieve a copy of the prior PSI from the archives.

At the continued hearing, defense counsel noted that there was a question as to the accuracy of the PSI, in that it reflected the occurrence dates of items 4 and 5 as 1992 and 2002, respectively, although both carried the same case number. Counsel observed that, from other information, it appeared that the discrepancy in dates might have been a typographical error. We note that the PSI in the record on appeal, showing a file date of January 20, 2006, reflects the same 1992 conviction date for both items.

Defense counsel further noted that in the prior case, the defense had not objected to the inclusion of the two Florida misdemeanors in that PSI. Apparently, Schow had no reason to object in the prior case because the misdemeanors were not aggregated and did not impact the criminal history score. Although Schow continued to maintain that he had only one domestic battery conviction in Florida, the State took the position that Schow was bound by the prior criminal history schedule; that his current criminal history was B; that the plea agreement precluded a defense motion for departure; and that the court should proceed to impose the presumptive prison sentence. Defense counsel requested leave to withdraw because she perceived that the plea agreement precluded her from moving for departure, but her client believed that a dispositional departure to probation was appropriate under the circumstances. The district court indicated that it wanted to know Schow's correct criminal history before sentencing and directed the State to obtain factual information on the Florida convictions, suggesting that the State obtain certified copies of the conviction records.

On October 27, 2005, the court reconvened the sentencing hearing. However, before the district court could pronounce sentence, defense counsel renewed her motion to withdraw. Her recitation suggests that the judge and attorneys had met in chambers and that defense counsel anticipated that the court would rule that Schow's criminal history had been fixed by the prior PSI and that he was precluded from requesting a dispositional departure by the plea agreement. The court granted defense counsel's motion to withdraw as Schow's attorney.

After the district court appointed new counsel, a hearing was held on January 5, 2006. The transcript indicates that, at some

point, the district court had previously ruled that the State had satisfied its burden of proving Schow's criminal history by presenting the prior, uncontested PSI from the 1997 case. However, the court had apparently left the issue open, by permitting the defendant to present evidence that the criminal history in the prior PSI was not accurate. The court specifically said that the burden had shifted to the defendant to show that the prior criminal history schedule was not true. Defense counsel announced that she did not intend to proceed with any evidence to prove the negative that Schow did not have the two Florida convictions, but rather she would be proceeding upon the motion to withdraw plea which had been recently filed.

With respect to the motion to withdraw plea, the district court observed that it was clear to the court from the plea agreement that when the plea was entered "the parties expected probation at that point." Before announcing that the motion would be taken under advisement, the judge further opined:

"But I do see from the plea agreement that it talks about probation pursuant to the LSI-R. If the parties had known he was a B, they wouldn't have been talking about probation. I'm confident that at least at the time of the plea the parties were thinking that he was not a B and that that was a surprise."

On January 17, 2006, the district judge continued his consideration of the motion to withdraw plea, ultimately denying the motion and summarizing its rationale as follows:

"So the only issue then is whether it's good cause when someone mistakenly believes they're going to get probation, pleads guilty with that understanding, and finds out later that criminal history wasn't as he expected. And I can't—I have read the *Ford* case. I can't see any case as close to this case in terms of what happened and consequences of what happened. And in that case, the Court of Appeals said that was not good cause. And I think I'm more or less bound by the Appellate Court decision on that even though I understand the mutual mistake aspect which was one of the criteria shown there. They're looking for more than just that here. Looking also for an assertion that the defendant actually was not guilty of the crime in addition to one of these other criteria."

The district court then proceeded immediately to sentence Schow to the mid-range grid box sentence, based on a criminal history B, and imposed the presumptive imprisonment. Schow ap-

pealed, claiming that his case was factually distinguishable from *State v. Ford*, 23 Kan. App. 2d 248, 930 P.2d 1089 (1996), *rev. denied* 261 Kan. 1087 (1997), relied upon by the district court, and that it was error to relieve the State from its obligation to prove the challenged Florida convictions.

## COURT OF APPEALS DECISION

The Court of Appeals identified two issues: (1) whether the district court abused its discretion in denying Schow's motion to withdraw his guilty plea because both parties to the plea agreement were mistaken about his criminal history; and (2) whether the district court erred in requiring Schow to disprove the existence of the two prior misdemeanor convictions in Florida.

On the first issue, the panel unanimously found no fault with the denial of Schow's motion to withdraw plea, declaring that a "[m]utual mistake of the defendant's criminal history score, standing alone, is insufficient to justify withdrawal of a plea." *Schow*, 37 Kan. App. 2d 941, Syl. ¶ 3. Further, the panel found that the record disclosed no evidence that Schow was not represented by competent counsel; that Schow failed to show that he was misled, coerced, mistreated, or unfairly taken advantage of; and that the information conveyed to Schow at the plea hearing established that the plea was fairly and understandingly made. 37 Kan. App. 2d at 946-47. The opinion reviewed and relied upon three cases: *State v. Ford*, 23 Kan. App. 2d 248; *State v. Haskins*, 262 Kan. 728, 942 P.2d 16 (1997); and *State v. Baldwin*, 28 Kan. App. 2d 550, 18 P.3d 977, *rev. denied* 271 Kan. 1038 (2001).

The panel was split on the second issue. The majority found that it was duty bound to follow the holding in *State v. Hobbs*, 276 Kan. 44, Syl. ¶ 8, 71 P.3d 1140 (2003), that a trial court is permitted to "take judicial notice of a defendant's presentence report filed in a previous case without objection instead of requiring the State to produce evidence to establish the disputed portion of the criminal history by a preponderance of the evidence." Accordingly, the majority found no error in the district court's procedure of shifting the burden to the defendant to disprove the convictions reflected on the previous case's PSI.

The dissent reviewed the statutory procedure for establishing a defendant's criminal history, noting that the State's initial burden is met by the PSI, unless the defendant files an objection to the report. If an objection is filed, K.S.A. 21-4715(c) provides that "[t]he state shall have the burden of *producing further evidence* to satisfy its burden of proof regarding any disputed part, or parts, of the criminal history." (Emphasis added.) See *Schow*, 37 Kan. App. 2d at 950 (Malone, J., dissenting in part). The dissent would not have permitted the prior PSI to satisfy the "further evidence" requirement, because the validity of the Florida convictions had not been litigated on the merits in the prior proceeding, *i.e.*, the elements of collateral estoppel had not been satisfied. 37 Kan. App. 2d at 951.

The dissent acknowledged our prior holding in *Hobbs* but found the facts in that case to be distinguishable. Further, the dissent found *Hobbs* to be of questionable precedential value because of the absence of significant analysis in the opinion and its reliance on the holding in *State v. Hatt*, 30 Kan. App. 2d 84, 86, 38 P.3d 738, *rev. denied* 273 Kan. 1038 (2002), which has been subsequently rejected by the Court of Appeals opinions in *State v. Welty*, 33 Kan. App. 2d 122, 98 P.3d 664 (2004), and *State v. Prater*, 31 Kan. App. 2d 388, 65 P.3d 1048, *rev. denied* 276 Kan. 973 (2003). *Schow*, 37 Kan. App. 2d at 954.

The dissent opined that the district court's initial direction that the State prove the Florida convictions with certified journal entries was the correct procedure. Thus, the dissent would have remanded for resentencing with directions for the district court to place the burden on the State to establish Schow's correct criminal history score. 37 Kan. App. 2d at 955.

## BURDEN OF PROVING PRIOR CONVICTIONS

On review, Schow concentrates his arguments on the issue of whether the district court erred in shifting the burden to him to refute the existence of both Florida misdemeanors. Thus, we take the liberty of discussing that issue first.

Our analysis will focus on an interpretation of the applicable statutes. "The interpretation of a statute is a question of law over

which this court has unlimited review. An appellate court is not bound by the trial court's interpretation. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

The statutes in play on this issue are K.S.A. 21-4714 and K.S.A. 21-4715. We begin with a review of each statute's content and apparent purpose.

K.S.A. 21-4714 begins in subsection (a) by directing that "[t]he court shall order the preparation of the presentence investigation [PSI] report by the court services officer [CSO] as soon as possible after conviction of the defendant." K.S.A. 21-4714(b) describes the information that is to be contained in the report, with the most notable subsection for our purposes, (b)(5), providing:

"(5) A listing of prior adult convictions or juvenile adjudications for felony or misdemeanor crimes or violations of county resolutions or city ordinances comparable to any misdemeanor defined by state law. Such listing shall include an assessment of the appropriate classification of the criminal history on the criminal history scale and the source of information regarding each listed prior conviction and any available source of journal entries or other documents through which the listed convictions may be verified. If any such journal entries or other documents are obtained by the court services officer, they shall be attached to the presentence investigation report. *Any prior criminal history worksheets of the defendant shall also be attached.*" (Emphasis added.)

K.S.A. 21-4714(c) prescribes who is to have access to which parts of the report, and subsection (d) clarifies that a criminal history worksheet will not substitute for a PSI report. Subsection (e) precludes certain optional report components from inclusion in the report. Subsection (f), relied upon by the State, reads as follows:

"(f) The court can take judicial notice in a subsequent felony proceeding of an earlier presentence report criminal history worksheet prepared for a prior sentencing of the defendant for a felony committed on or after July 1, 1993." K.S.A. 21-4714(f).

Finally, subsection (g) directs that all PSI reports are to be submitted on a form approved by the Kansas Sentencing Commission.

It is readily apparent that K.S.A. 21-4714 was intended to address the preparation and submission of the PSI report. As noted above, K.S.A. 21-4714(b)(5) directs the CSO preparing the current PSI report to attach any criminal history worksheets previously

prepared for the defendant. In that context, the apparent purpose of the judicial notice provision of subsection (f) would be to permit the court to consider the attached prior worksheets as part of the PSI report without further foundation from the preparer of the prior worksheet, who may well be unavailable for the current proceeding. In other words, the judicial notice provision deals with the admissibility of the prior worksheets.

In contrast, K.S.A. 21-4715 addresses the legal effect of the PSI report on the sentencing proceedings. Subsection (a) directs that either the defendant must admit to the reported criminal history in open court or the sentencing judge must determine the criminal history, by a preponderance of the evidence, at the sentencing hearing. The remaining two subsections read as follows:

"(b) Except to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history.

"(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. Such notice shall specify the exact nature of the alleged error. The state shall have the burden of producing further evidence to satisfy its burden of proof regarding any disputed part, or parts, of the criminal history and the sentencing judge shall allow the state reasonable time to produce such evidence to establish the disputed portion of the criminal history by a preponderance of the evidence." K.S.A. 21-4715.

Subsection (b) appears to extend the judicial notice provision of K.S.A. 21-4714(f) to the current criminal history worksheet. The court may admit the PSI report without the State providing further foundation or further proof of its contents, *i.e.*, the preparing CSO need not testify and provide evidence to establish the veracity of the sources of his or her information.

However, subsection (b) is explicitly subject to the provisions of subsection (c), which permit the defendant to file specific written objections to the criminal history worksheet and require the State to carry the burden of proving the disputed parts by producing further evidence. While the PSI report has been initially admitted into evidence under K.S.A. 21-4715(b), the report is no longer conclusive proof of the disputed parts so as to satisfy the State's

burden. The statute makes no exception for disputed parts which may have been contained in a prior criminal history worksheet.

The Court of Appeals majority relied upon the judicial notice provision of K.S.A. 21-4714(f) to affirm the district court's ruling that, even after the defendant files a written objection, a prior criminal history worksheet remains conclusive proof of its listed convictions, unless the defendant can disprove their existence. *Schow*, 37 Kan. App. 2d at 948. Such a finding isolates a provision in the statute addressing the preparation and filing of the PSI report, K.S.A. 21-4714, and applies it to trump the clear language of the statute specifically addressing the legal effect of the report, K.S.A. 21-4715. It does not appear to be consistent, harmonious, or sensible to assign the burden of proof on disputed crimes based solely upon the source of the information utilized by the CSO to prepare the current worksheet. See *McIntosh v. Sedgwick County*, 282 Kan. 636, 642, 147 P.3d 869 (2006) (court should construe all parts of an act *in pari materia* and reconcile the different provisions so as to make them consistent, harmonious, and sensible).

Moreover, K.S.A. 21-4714(b)(5) provides that prior criminal history worksheets are to be attached to the current criminal history worksheet, *i.e.*, the prior worksheets are a *part* of the current PSI report. Therefore, the provisions of K.S.A. 21-4715(c) requiring the State to produce further evidence to prove the "disputed part, or parts, of the criminal history" would necessarily apply to the disputed part or parts of the prior criminal history worksheet.

To be fair to the Court of Appeals majority, it dutifully followed the holding recited in *State v. Hobbs*, 276 Kan. 44, Syl. ¶ 8, that a district court is permitted to "take judicial notice of a defendant's presentence report filed in a previous case without objection instead of requiring the State to produce evidence to establish the disputed portion of the criminal history by a preponderance of the evidence." In that case, the defendant had attempted to hold the State accountable in a subsequent sentencing for what the district court found to be a clerical error in the prior case by misclassifying a residential burglary as a nonperson felony. In other words, the *Hobbs* decision effected an application of the correct criminal history.

Without any independent analysis, *Hobbs* quoted from *Hatt*, 30 Kan. App. 2d at 86. 276 Kan. at 57-58. As the Court of Appeals dissent points out, that court has retreated from *Hatt's* judicial notice holding in favor of the more important consideration that a defendant be sentenced based upon an accurate criminal history calculation. *Schow*, 37 Kan. App. 2d at 951-53; see *State v. Welty*, 33 Kan. App. 2d 122, and *State v. Prater*, 31 Kan. App. 2d 388. Nevertheless, the district court in *Hobbs* did not blindly adopt the prior criminal history worksheet. It considered Hobbs' objection and made a finding that there had been a clerical error and calculated the current criminal history based upon its determination of the correct classification of the prior crime. Therefore, *Hobbs'* recitation of the *Hatt* rule was unnecessary to that decision.

Moreover, criminal statutes must be strictly construed in favor of the accused, provided the judicial interpretation is reasonable and sensible to effect legislative design and intent. *State v. Snow*, 282 Kan. 323, 340-41, 144 P.3d 729 (2006). K.S.A. 21-4715(c) clearly provides a defendant the right to file a written objection to his or her criminal history worksheet and requires the State to carry the burden of producing further evidence to prove the convictions contained in the worksheet. To find that the burden shifts to the defendant to disprove convictions contained in a prior criminal history worksheet would require us to ignore the plain language of K.S.A. 21-4715(c) and employ an extremely liberal construction of K.S.A. 21-4714(f) in favor of the State.

Such a departure from our construction rules does not appear justified by legislative intent. The statutes lean toward maximizing the probability that a defendant will be sentenced with the correct criminal history score. For instance, in addition to providing for an opportunity for written objections, the legislature has provided that prior convictions discovered after a plea is accepted are required to be included in the criminal history score, K.S.A. 21-4707(c)(4). Likewise, upon any appeal, the appellate court can review a claim that the district court erred in including or excluding a prior conviction. K.S.A. 21-4721(e)(2).

Therefore, we find, as a matter of statutory interpretation, that a defendant may file a written objection to his or her criminal

history worksheet, including those convictions which may have been contained in a previous criminal history worksheet, and that such an objection places the burden on the State to produce further evidence establishing the existence of the challenged conviction(s) by a preponderance of the evidence. Any suggestion to the contrary in *Hobbs* is disapproved. Here, the district court erred in shifting the burden to the defendant to disprove the existence of the disputed prior convictions. The sentence is vacated, and the matter remanded to the district court for a proper determination of criminal history and resentencing, if necessary.

Before moving to the next issue, we pause to note that we have not been presented with a situation in which the State could have asserted collateral estoppel to avoid relitigating the existence of a prior conviction. As the Court of Appeals dissent noted, an essential element of collateral estoppel is that the issue had been decided on its merits in the prior proceeding. *Schow*, 37 Kan. App. 2d at 952 (citing *Prater*, 31 Kan. App. 2d at 395). Here, there was no prior judgment on the merits of the existence of the two Florida convictions. In the proper case, the State might be able to rely upon collateral estoppel to avoid repeatedly litigating the efficacy of the same prior convictions in successive sentencing hearings.

## MOTION TO WITHDRAW PLEA

In his petition for review, Schow points to the district court's specific finding that both parties entered into the plea agreement with the idea and expectation that Schow would receive probation and asserts that such a mutual expectation provides good cause for withdrawing the plea. He further argues that the manner in which the prior criminal history was handled should have led the district court to grant the plea withdrawal motion.

K.S.A. 22-3210(d) specifically addresses the withdrawal of a plea of nolo contendere or guilty. It establishes two standards for the court. At any time before sentencing, the court may permit the plea to be withdrawn "for good cause shown and within the discretion of the court." However, after a sentence has been adjudged, the court may permit a plea withdrawal only "[t]o correct manifest injustice." K.S.A. 22-3210(d). Here, to avoid blurring the

distinction between the standards, we clarify that this case presents a situation in which the lesser standard of "good cause" is applicable. The district court did not need to find a manifest injustice, such as a violation of due process. *Cf. Ford*, 23 Kan. App. 2d at 252 (in a good cause case, nevertheless finding that due process does not require the State to present an accurate criminal history prior to the court's acceptance of a plea).

In reviewing a presentence denial of a motion to withdraw plea, we employ an abuse of discretion standard of review, as suggested by the language of the statute. Further, we require the defendant to bear the burden of establishing the abuse of discretion. *State v. Harned*, 281 Kan. 1023, 1042, 135 P.3d 1169 (2006). However, in order for the district court's decision to receive the full measure of that standard's deference, it must have been based upon a correct understanding of the law.

"Generally, the trial court's decision is protected if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards. However, an abuse of discretion may be found if the trial court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards. [Citations omitted.]" *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006).

As previously noted, the district court relied on the Court of Appeals' prior decision in *Ford*, which declared, *inter alia*, that "[t]o justify a motion to withdraw a plea prior to sentencing, the motion should allege that the defendant is not guilty of the offense charged." 23 Kan. App. 2d 248, Syl. ¶ 1. However, subsequently, this court refuted that prerequisite.

"It is apparent that this court does not require an allegation that defendant is not guilty as charged as a prerequisite for withdrawing a plea of guilty or nolo contendere prior to sentencing. Nor is there such a requirement in the statute, which bases withdrawal on good cause shown and on the discretion of the trial court." *State v. Vasquez*, 272 Kan. 692, 696, 36 P.3d 246 (2001).

Therefore, to the extent the district court refused to grant the motion to withdraw plea based upon an erroneous understanding of the law, *i.e.*, that an allegation of innocence was a prerequisite, the ruling would be an abuse of discretion. However, the Court of Appeals did not focus on that aspect of the district court's ruling

or that portion of the *Ford* decision. See *State v. Hoge*, 283 Kan. 219, 225-26, 150 P.3d 905 (2007) (district court's correct result can be affirmed notwithstanding an erroneous rationale).

The Court of Appeals began by listing the oft-cited factors which a district court should evaluate in determining whether good cause has been shown, *i.e.*, whether " ' "(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made." [Citation omitted.]' *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006)." *Schow*, 37 Kan. App. 2d at 944. Then, the opinion proceeded to determine that a mutual mistake as to criminal history is insufficient reason, as a matter of law, to permit a plea withdrawal. The Court of Appeals divined that rule from *Ford, State v. Haskins*, 262 Kan. 728, 942 P.2d 16 (1997), and *State v. Baldwin*, 28 Kan. App. 2d 550, 18 P.3d 977, *rev. denied* 271 Kan. 1038 (2001), albeit the opinion duly noted the factual distinctions of *Haskins* and *Baldwin*. Specifically, the Supreme Court in *Haskins* found that a plea agreement did not exist in that case and the defendant in *Baldwin* actually received the probation for which he had plea bargained, even though his true criminal history score was lower than he believed it to be. 262 Kan. at 732.

En route to its determination that a mutual mistake about criminal history is not good cause, the Court of Appeals noted that the defendant in *Ford* had argued that his plea was not "intelligently" made because he had relied on the State's representation as to his criminal history score at the time he entered his plea. The opinion then quoted *Ford's* response to that argument, which was that there is " 'no recourse for a plea unintelligently made.' 23 Kan. App. 2d at 252." *Schow*, 37 Kan. App. 2d at 945. We pause to address that sweeping assertion.

While we would agree that a defendant should not get relief from a plea decision simply because he or she determines, in hindsight, that it was not the most intelligent course of action, that was not the argument put forth in *Ford*. Rather, Ford argued that he had made his plea decision based upon misinformation from the State, *i.e.*, that the plea was not "fairly and knowingly made." See

*Edgar*, 281 Kan. at 36. In that context, *Ford*'s summary response, which was completely unsupported by any authority, is difficult, if not impossible, to reconcile with *Edgar*'s list of good cause evaluation factors.

Where a defendant has not had competent counsel, or where a defendant has been misled, coerced, mistreated, or unfairly taken advantage of, or where a defendant's plea has not been fairly and understandingly made, one would have to characterize the resultant plea as "unintelligently made." In that event, there is indeed recourse for the unintelligently made plea; the district court can and ordinarily should grant the motion to withdraw plea pursuant to K.S.A. 22-3210(d). *Cf. White v. State*, 203 Kan. 687, 690, 455 P.2d 562 (1969) ("If such plea is induced by promises or threats which deprive it of its voluntary character, it is void, and a conviction based thereon is open to collateral attack.").

Likewise, one might question the need to pronounce any rule with respect to a mutual mistake about criminal history. The district court is imbued with discretion to determine whether the defendant has shown good cause for a plea withdrawal, and our case law has proffered legitimate factors to consider in making that determination. We concur that a defendant cannot meet his or her good cause burden by merely declaring that the parties were mutually mistaken about the defendant's criminal history score. However, the circumstances giving rise to the mistake may well implicate the *Edgar* factors and should be available for consideration by the court.

The district court did not reach an analysis of the *Edgar* factors. In its summary review of the those factors, the Court of Appeals apparently completely ignored the circumstances surrounding the misinformed plea negotiations because of its declared rule on mutual mistake.

With respect to the first factor, the Court of Appeals stated that the record did not suggest that Schow was not represented by competent counsel. To the contrary, we find that the record raises a number of questions. An initial indication of performance problems might be found in the fact that defense counsel felt compelled to withdraw from the case in order to try to protect Schow's inter-

ests. Next, the current PSI indicated that the information about the Florida misdemeanors, which raised the criminal history score above that used in the plea bargain, was obtained from a prior PSI from the same district court. One might wonder whether it was reasonable for defense counsel to rely upon the State's representation of the number and severity level of prior convictions, when verification could be obtained from the court's record. Furthermore, in order to reach the higher score, the misdemeanors had to be aggregated and converted into a person felony, prompting a question as to whether the current mistake was prompted by counsel's failure to know or to apply the current sentencing guidelines.

With respect to the second factor, the Court of Appeals found no showing that Schow was misled, coerced, mistreated, or unfairly taken advantage of when he entered the plea agreement because the written agreement expressly stated twice that the State would recommend a probation sentence if Schow was eligible. The apparent suggestion is that Schow could not have been misled because he was explicitly informed that the probation recommendation was contingent. That notion is trumped by the district court's explicit finding that the parties entered into the plea agreement under the belief that the criminal history was D, *i.e.*, that Schow was eligible for probation. Moreover, under the sentencing guidelines, the State's commitment in the plea agreement to recommend a probation sentence is of limited value. If Schow fell within a presumptive probation grid box and the court did not initiate its own departure procedure and make the requisite *legal* (not discretionary) findings, the district court would be required to impose probation regardless of what the State might recommend.

More to the point, the inquiry is whether Schow was misled about his criminal history score or was induced to enter a plea because of assurances that his criminal history score was D. Any caveats in the written agreement or in the judge's recitation at the plea hearing might well be germane to the question of whether Schow had actually been misled or induced, but they need not be determinative. If a defendant is given assurances about his or her criminal history score which are based upon known facts, any caveats about what might happen if the score is different would be

ineffectual to countermand those assurances. For instance, the disputed misdemeanors in this case were contained in the PSI of a prior case, yet they were apparently not aggregated in that prior case to score as a felony. The district court might well find that Schow was misled into believing the same misdemeanor convictions would receive the same legal treatment in the current case as they received in the prior case, *i.e.*, that they would not increase the criminal history score.

For the third factor, the Court of Appeals found Schow's plea to be fairly and understandingly made because the district court advised him of his maximum sentence; the district court informed him that the sentencing court was not bound to the State's recommendation of probation; and the district court was aware that Schow's counsel separately conveyed this information to Schow, to which Schow replied, "Yes, your honor, that is fine."

If Schow reasonably believed the assertions of the prosecutor and defense counsel that his criminal history score was D, it is difficult to intuit what enlightenment Schow would find in the court's recitation of the maximum sentence which could be imposed upon a defendant with a score of A. This is especially true where the district court specifically recited the grid box range for a criminal history score of D.

Moreover, any statement that the sentencing court would not be bound by the State's recommendation of probation would have been misleading, at best. As noted previously, except for filing a motion for departure, the State has no influence on whether a defendant who falls within a presumptive probation grid box is sentenced to probation; the guidelines mandate that sentence. Furthermore, in this instance, the district court specifically told Schow that, if his score was D, he was "pretty much assured of . . . getting probation initially because that will be what the sentencing guidelines tell me to do."

Further, the Court of Appeals took Schow's words, "Yes, your honor, that is fine," out of context. That statement referred to the district court's discussion of what might happen if the other judge who had presided over the other misdemeanor case refused to modify Schow's current jail sentence to also grant probation to the

Residential Center in that other case. The statement did not manifest a realization that the plea might result in a presumptive prison sentence because both attorneys had misread the facts or the law applicable to Schow's true criminal history score.

Finally, the Court of Appeals recited the rule that when "there is a mutual mistake as to defendant's criminal history score, the trial court is obligated to sentence defendant on his true criminal history score." *Baldwin*, 28 Kan. App. 2d at 552. While we agree with that statement, it has no relevance to the issue presented. Schow did not ask the district court to sentence him based upon the mistaken criminal history score. He asked to withdraw his plea.

In summation, a defendant seeking to withdraw his or her plea prior to sentencing has the burden to show the existence of good cause for permitting the plea withdrawal. In determining the existence of good cause, the district court should consider whether: (1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made. Where a defendant has pled guilty pursuant to a plea agreement which was based upon a mutual mistake as to defendant's criminal history score, the district court may consider the circumstances giving rise to the mutual mistake to the extent they may implicate the factors applicable to the existence of good cause to withdraw a plea.

Below, the district court apparently did not apply the *Edgar* factors in its determination of whether good cause existed to permit Schow to withdraw his plea. Therefore, we reverse the district court's denial of Schow's motion to withdraw plea and remand for the district court to apply the appropriate legal standards to determine whether Schow established good cause and then to exercise its discretion to rule on the motion.

Judgment reversed, sentence vacated, and case remanded with directions.