NOT DESIGNATED FOR PUBLICATION

No. 117,244

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHNNIE LEE WASHINGTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN and JOHN J. KISNER, JR., judges. Opinion filed April 6, 2018. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and BUSER, JJ.

PER CURIAM: Johnnie Lee Washington appeals the district court's denial of his motion to withdraw his presentencing guilty pleas. After taking evidence on the matter, the court denied his motion. The court made a thorough review of the evidence and weighed the differences between Washington's statements with those of his former defense counsel. The court gave good reasons for believing the lawyer's evidence and not believing the evidence from Washington. We are in no position to doubt or modify that credibility determination and therefore affirm the court's denial of his motion to withdraw his pleas.

1

*A plea bargain is followed by two guilty pleas.*

Washington made a plea bargain with the State and agreed to plead guilty to two counts of aggravated battery, to pay restitution, and to have no contact with the victim. In return, the State agreed to:

- dismiss a criminal threat charge;

- recommend the aggravated number in the sentencing grid box;

- recommend that Washington serve the presumptive prison sentence;

- recommend concurrent sentences; and

- refrain from filing any charges against Washington for a possible violation of the protective order concerning the victim.

In due course, Washington entered guilty pleas.

When Washington entered his guilty pleas the court asked him a series of questions, inquiring about his ability to plead and the extent of his understanding. The court asked whether he had any difficulties reading. Washington responded, "No." The court asked if Washington had completely read and understood the plea agreement. Washington responded, "Yes." The court advised Washington of the rights he was giving up by pleading guilty, including the right to call witnesses on his behalf. Washington stated he understood these rights.

The court then read the plea agreement on the record and asked Washington if that was his understanding of the plea agreement. Washington responded, "Yes." The court then asked Washington if there had been any other promises or threats made to get him to take the pleas. Washington responded, "No." The court asked if Washington had any history of mental illness or mental problems that might affect his ability to understand his rights or the pleas. Washington responded, "No." The court asked Washington if he had

had sufficient time to discuss his legal rights and options with his attorney, Sharon Barnett, and if he was satisfied with her services. Washington responded, "Yes."

After hearing all of this, the court found that Washington understood the charges against him and the consequences of a guilty plea, that he understood his rights, and that his waiver of those rights was knowing, intelligent, free, and voluntary. The court accepted the pleas and found him guilty of both counts.

Prior to sentencing, Washington filed a pro se motion to withdraw his pleas and the court appointed a new attorney to represent him. Washington's new attorney then filed a motion to withdraw the pleas alleging that Barnett had failed to:

- pursue an intoxication defense;
- did not investigate possible witnesses;
- did not hire an expert to review the victim's medical records;
- did not obtain Washington's employment records; and
- told Washington that if he went to trial the State could file charges against his baby's mother and take his son away.

The motion also alleged that Washington was unable to read the plea agreement because he suffers from dyslexia.

When the court heard Washington's motion to withdraw his pleas, it heard the testimony of Washington and his former lawyer, Barnett. Their version of the events differed. For purposes of showing the contrast of their testimonies we offer a brief synopsis of both.

Washington testified that:

- Barnett told him he did not have a defense. He asked her about intoxication and she told him that was not a defense. He was drinking, smoking marijuana, and snorting cocaine the night of the February incident.

- He asked Barnett about getting a SACK (Substance Abuse Center of Kansas) or a mental health evaluation and she told him that they could do that after trial.

- Barnett did not hire a private investigator or interview witnesses. Washington gave her the names and addresses of his brother and his cousin as witnesses to his drinking and doing drugs.

- He asked Barnett to hire an expert to review the victim's medical records, but she never brought the expert to see him or showed him any documentation that an expert had reviewed the records.

- He had an alibi. He asked Barnett to obtain his employment records because they would have proved that he was at work.

- He was coerced to take the pleas because Barnett told him that his baby's mother could be charged for having marijuana in her home and his son could be taken away.

- He could not read the plea agreement because he suffers from dyslexia.

Barnett testified that she met with Washington 18 times and was prepared to go to trial prior to the pleas. She also testified that:

- She and Washington never discussed an intoxication defense. Washington did not indicate that he was using drugs and alcohol the night of the incident.

- She told Washington that a SACK or mental health evaluation was premature because those are usually used for mitigation purposes at

4

sentencing. She did not recall that Washington had any mental health problems.

- Washington requested that Barnett hire an investigator, but he refused to give her the names of the people he wanted the investigator to talk to. He would only say he had a "bunch of people" he wanted an investigator to talk to.

- She did have an expert review the victim's medical records to determine if her injuries were consistent with her statements. Barnett told Washington about the expert's opinion, which was not favorable to him. Washington did not believe she had talked to an expert and he wanted the expert to go to jail and speak with him directly. She concluded that he was simply not happy with the expert's opinion.

- Washington never told her that he had an alibi for either charge. Washington did ask her to obtain employment records, but the records were not relevant because he wanted records to show he was working on the dates after February 20 (the date the battery had occurred). He was not working on February 20. He persisted and so she told him she would get the records, but she forgot. She told him that she could request a continuance, but Washington said he did not want to wait anymore.

- She did not threaten Washington or tell him that if he did not take a plea that the State would take away his son. She simply advised him that a drug charge was a possibility based on a conversation he had on a recorded jail call telling his ex-wife what to do with some marijuana. Barnett had advised him to stop talking on the phone about that.

- Washington never told her that he could not read or he suffers from dyslexia. Nevertheless, after Washington read the plea agreement, she read the document to him to make sure he understood everything.

Since the court found that Washington's and Barnett's testimony was so far apart, it stated that credibility was a key factor in its decision. The court found portions of Washington's testimony—that he was drinking and doing drugs the night of the incident, and that he was at work during the incident—contradictory. The court also found that Washington's testimony contradicted the statements he made at the plea hearing. Thus, the court concluded that Barnett, the lawyer, was "by far the more credible witness."

In analyzing the "*Edgar* factors" in *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006), the court found Barnett "absolutely competent." The court found there was no indication that Washington was misled, coerced, mistreated, or unfairly taken advantage of. Rather, he likely had a case of "buyer's remorse." Finally, the court concluded that the pleas were fairly and understandingly made. The court denied the motion to withdraw the pleas and eventually sentenced Washington to 75 months in prison.

In this appeal, Washington contends the district court erred because his attorney failed to conduct a thorough investigation of his possible defenses, he was unable to read the plea agreement, and he believed that if he did not enter a plea, the State would take his son away.

*First, we review some fundamental points of law.*

It is well established that to comport with due process, a guilty plea must be knowing and voluntary. *State v. Beauclair*, 281 Kan. 230, 237, 130 P.3d 40 (2006). Therefore, before sentencing, a plea may be withdrawn within the discretion of the court for good cause shown. K.S.A. 2017 Supp. 22-3210(d)(1).

Three factors—often referred to as the *Edgar* factors—generally guide a district court's consideration whether a defendant has demonstrated good cause:
(1) whether the defendant was represented by competent counsel;

6

(2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and

(3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36.

These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "viable benchmarks" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

In showing good cause to withdraw a guilty or no contest plea, the defendant is not required to show his counsel was unconstitutionally ineffective; rather, the defendant may rely on "'[m]erely lackluster advocacy'" to support good cause under the first *Edgar* factor. *Schaefer*, 305 Kan. at 589. A defendant's determination, in hindsight, that his plea was not the best course of action, without more, is not sufficient good cause. See *State v. Schow*, 287 Kan. 529, 542, 197 P.3d 825 (2008).

On appeal, the defendant must establish that the trial court abused its discretion in denying a presentence motion to withdraw plea. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). A judicial action constitutes an abuse of discretion if

- no reasonable person would take the view adopted by the trial court;
- is based on an error of law; or
- is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Finally and most important for this case, appellate courts do not reweigh the evidence nor pass on the credibility of witnesses. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

7

*Washington's contentions ask us to reweigh the evidence and decide credibility.*

After looking at each of Washington's arguments, it is clear that we would have to reweigh the district court's credibility determination to decide in his favor. All controlling authority tells us that we cannot do this. The way our court system is organized makes it obvious that the district court is in the unique position of evaluating the witness' demeanor. Here, the same judge presided over Washington's plea hearing and the hearing on his motion to withdraw his pleas. The district court had an opportunity to question Washington and observe his demeanor at the plea hearing as well as the hearing on the motion to withdraw his pleas.

The court gave several reasons for its determination that Barnett was a more credible witness, which included Washington's contradictions at both hearings. To us, Washington points to no error of fact in the district court's decision. Also, it is obvious that Barnett's testimony refutes each of Washington's claims that he makes on appeal. In our review of this record, we conclude that the court correctly held that he was competent, his pleas were knowingly and voluntarily made, and that Barnett was "absolutely competent." We offer three examples.

Washington contends that he was not represented by competent counsel. He argues Barnett provided "lackluster advocacy" because she "did not aggressively pursue [his] requests to investigate his intoxication and alibi defenses." This contrasts with his statement at the plea hearing where he asserted that he was satisfied with Barnett's representation.

Barnett, however, testified that Washington did not discuss an intoxication defense with her or tell her that he was intoxicated on the date of the incident. Washington did not give her the names of any witnesses he wanted interviewed. Barnett further testified that Washington did not tell her that he had an alibi for either charge. He was not working at

8

the time of the February incident and the employment records he wanted were for days *after* the incident. Barnett did have an expert review the victim's medical records and was prepared to go to trial. At the plea hearing, the court made specific inquiry about Washington's physical and mental condition, as well. No cause for concern arose from any of Washington's answers. The district court did not err in determining that Washington was competent to enter his pleas.

Next, Washington argues that his pleas were not knowing and voluntary. He argues his pleas were not knowing because he was unable to read his plea agreement. He argues that if Barnett had sought a SACK or mental health evaluation prior to the pleas, it would have likely revealed his challenges with reading.

In contrast, Barnett testified that Washington never told her that he was unable to read or that he had dyslexia. In fact, she read the plea agreement to him to make sure he understood everything. At the plea hearing, Washington stated that he could read, and had read and understood the plea agreement. The district court *then read the agreement to him on the record and explained all of the rights that Washington was giving up by pleading guilty.* Washington again stated that he understood his rights and the plea agreement. Nothing in the record supports a belief that Washington has a disability in understanding English. The district court did not err in finding the pleas were knowingly made.

Washington argues his pleas were not voluntary because he believed that if he did not enter a plea, the State could file criminal charges against his son's mother and take his son away from him. In other words, he was coerced or pressured into entering a plea.

Barnett testified that she never told Washington that if he did not take a plea, the State could file criminal charges against his son's mother or take his son away. She did advise Barnett to stop talking on the jail telephone about marijuana at his ex-wife's house

9

because he could be charged for that. We note that the plea agreement does not prevent the State from filing criminal charges relating to any marijuana. At the plea hearing, Washington stated that no one had threatened him or made any promises to get to him to plead other than what was stated in the plea agreement. The district court did not err in finding his pleas were voluntarily made.

Our review of this record for an abuse of discretion leads to one conclusion. Washington has not shown that the district court's decision was unreasonable or based on an error of fact or law. Therefore, we hold that the district court did not abuse its discretion in denying Washington's motion to withdraw his pleas for lack of good cause shown.

*We reject Washington's* Apprendi *issue.*

Washington also argues that the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because the district court used his prior convictions to increase his sentence without requiring the prior convictions be proved to a jury beyond a reasonable doubt. He acknowledges that the Kansas Supreme Court has rejected a similar argument in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), but raises the issue to preserve it for federal review. Our Supreme Court recently reaffirmed *Ivory* in *State v. Scuderi*, 306 Kan. 1267, 1267, 403 P.3d 1206 (2017).

We are duty bound to follow Kansas Supreme Court precedent in the absence of some indication that the court is departing from its earlier position. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Since there is no indication our Supreme Court is departing from *Ivory*, we are compelled to conclude that the district court did not violate *Apprendi* in sentencing Washington.

Affirmed.