NOT DESIGNATED FOR PUBLICATION

No. 122,872

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA MATTHEW STUBBY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed July 2, 2021. Affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and CLINE, JJ.

PER CURIAM: Claiming his attorney had misinformed him about his possible sentences, Joshua Matthew Stubby asks us to reverse the district court's denial of his presentence motion to withdraw his guilty plea. Based on our review of the record, we see no reason to do so and affirm.

Stubby pled guilty to two counts of felony stalking and two misdemeanor counts of violating a protection from abuse order. In return, the State agreed to recommend the lowest number in the sentencing grid box and to not oppose concurrent sentences. Stubby

1

signed a plea agreement which told him that the court could impose a sentence of up to 12 months in jail for each violation of the protection order and a sentence of between 5- and 17-months' imprisonment for each stalking charge. The agreement stated:

- the court was not bound by the plea agreement;
- the court could impose the maximum penalties and also impose consecutive sentences;
- his sentence would be determined by using his criminal history; and
- if more criminal history was discovered before sentencing, that history could be used to increase his sentence.

At his plea hearing, Stubby told the court he had not been promised anything but what was in the plea agreement. The court told Stubby that he was facing up to 12 months in jail for each of the misdemeanor counts and between 5 to 17 months in prison for each of the felony counts. Stubby stated that he understood the possible penalties and had discussed all of this with his attorney.

The presentence investigation report set Stubby's criminal history score at B by converting his six person misdemeanors into two person felonies. He had several misdemeanor convictions for violating a protective order—some of which had occurred between the time this case was filed and the time he pled guilty.

Stubby then moved for a dispositional departure sentence to probation. He also moved to withdraw his plea alleging "a failure to communicate with his attorney regarding his understanding of the terms of the plea agreement." His attorney then asked to withdraw based on a conflict of interest. The court granted the attorney's motion to withdraw and appointed new counsel for Stubby.

At the hearing on Stubby' s motion to withdraw his plea, Stubby testified he would not have entered his plea if he had known he could get longer than a five-month sentence.

Stubby was asked whether he had talked to his attorney about a specific sentence. He responded, "Just the five months because that was the low number and that's why I asked her because the range was five to 17. The day before I signed the plea I called her and said, [A]re you sure I'm signing this for five months? Right? And she said, yes." He testified she told him she "was pretty certain she could get me probation." But he admitted on cross-examination that he remembered the judge advising him he could get anywhere between 5 and 17 months. And he admitted he was advised that although the State would recommend the low number, the judge was not bound by that. He testified he was surprised when the presentence investigation report showed his criminal history score as B because of all his misdemeanors. But he admitted it had been explained to him that the sentencing range would depend on his criminal history.

The court found there was no cause to allow Stubby to withdraw his plea. It found Stubby was "very aware of the possible sentence." The court found his plea was "knowingly, freely, intelligently voluntarily entered." And the court found that it was not uncommon for a defendant not to know his criminal history score during plea negotiations. The court, however, did grant his departure motion and released him on 12 months of probation with a 14-month prison sentence.

Stubby appeals the denial of his motion to withdraw his plea. He argues his counsel mistakenly projected his criminal history score by failing to consider the conversion of his person misdemeanor convictions. Thus, he argues, he was given erroneous advice by counsel and was misled into believing his sentence would be five months, when based on his criminal history the sentencing range was between 13 and 15 months. Because of this, he argues, the plea was not fairly made.

We review a district court's decision to deny a presentence motion to withdraw a guilty plea for an abuse of discretion. A judicial decision constitutes an abuse of discretion if it is

- arbitrary, fanciful, or unreasonable;
- based on an error of law; or
- based on an error of fact.

*State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020).

The movant bears the burden to prove the district court erred in denying the motion. *State v. Fox*, 310 Kan. 939, 943, 453 P.3d 329 (2019).

A statute and four cases are pertinent to our review. "A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2020 Supp. 22-3210(d)(1). When determining whether a defendant has shown good cause to withdraw a plea, a district court generally looks to the following three factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006):
- whether the defendant was represented by competent counsel;
- whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and
- whether the plea was fairly and understandingly made.

*Frazier*, 311 Kan. at 381.

These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

It also is important that a defendant must be made aware of the consequences of a plea. *State v. Moses*, 280 Kan. 939, 948-49, 127 P.3d 330 (2006). In showing good cause to withdraw a no-contest plea, the defendant need not show his counsel was

4

unconstitutionally ineffective; rather, the defendant may rely on "'[m]erely lackluster advocacy'" to support good cause under the first *Edgar* factor. *Schaefer*, 305 Kan. at 589.

Stubby cites *State v. Schow*, 287 Kan. 529, 197 P.3d 825 (2008), for support. Schow sought to withdraw his plea before sentencing based on a mutual mistake concerning his criminal history score. The district court ruled as a matter of law that a mutual mistake about criminal history was not good cause to withdraw a plea. As here, Schow pled to a severity level 9 felony. But in Schow's plea agreement, the State had agreed to recommend probation.

At Schow's plea hearing, the court advised him that the sentencing range for a level 9 felony was between 5 and 17 months. Defense counsel advised the court that the parties believed Schow to have a criminal history score of D. The court then advised Schow that if his score was D his sentence would be presumptive probation. After the plea hearing, a PSI report was prepared reflecting that Schow's criminal history was B, rather than D, because three person misdemeanors were converted to a person felony. At the hearing on Schow's motion to withdraw his plea, the district court explicitly found that the parties entered into the plea agreement believing Schow's criminal history score was D and that Schow would be eligible for probation. But the court denied the motion.

Our Supreme Court reversed, vacated the sentence, and remanded. *Schow*, 287 Kan. at 530. The court held that the good-cause burden is not met merely by declaring that the parties were mutually mistaken about the defendant's criminal history score. But the district court may consider the circumstances leading to the mutual mistake when they implicate the *Edgar* factors. 287 Kan. at 541-46.

This case differs from *Schow*. In *Schow*, there were on-the-record discussions about Schow's anticipated criminal history score, and the district court made an explicit finding that the parties entered into the plea agreement based on a mutual mistake. In

contrast, Stubby's testimony at the motion hearing is the only evidence supporting his claim. The record does not otherwise show that Stubby received assurances that he would have any specific criminal history score. The plea agreement merely provides that the State would agree to recommend the "low number on the applicable guidelines [sentence]." It does not say that the parties expected the presumptive sentence to be probation.

There is no evidence that the parties negotiated the plea agreement based on a projected criminal history score. At the plea hearing, there was no discussion of his anticipated criminal history score and no prediction that Stubby would likely qualify for probation. At the motion hearing, the district court made no finding that the parties entered into the plea agreement believing Stubby had any specific criminal history score. The court found that it was not uncommon that a defendant would not know his criminal history score at the time of a plea, but the court found that Stubby did know that his sentence would depend on that score and did know the possible sentencing range. The district court simply did not believe Stubby's testimony, finding that this was a case in which he had "hoped for the best" but that he was "very aware" of his possible sentences.

Stubby was told of the sentencing range in his case several times. The *Schow* court found insignificant the district court's recitation at the plea hearing of the maximum sentence which could be imposed on a defendant with a criminal history score of A because there had been a specific discussion of Schow having a criminal history score of D. 287 Kan. at 545. Here, there was no such assurance concerning Stubby's criminal history score. Thus, the warnings Stubby received in the plea agreement and at the plea hearing concerning the possible sentencing range support the district court's finding that the plea was knowingly, freely, intelligently, and voluntarily made. See *State v. Lackey*, 45 Kan. App. 2d 257, 270, 246 P.3d 998 (2011). Stubby specifically stated at the plea hearing that he had been made no promises other than what was in the plea agreement.

6

Stubby did not testify at the motion hearing that his attorney failed to explain to him that the conversion of his person misdemeanor convictions—that he was continuing to accumulate—would affect his criminal history score. Thus, Stubby has not met his burden to show an abuse of discretion. A reasonable person could conclude that Stubby was not misled and that his plea was fairly and understandingly made.

Affirmed.