NOT DESIGNATED FOR PUBLICATION

No. 125,347

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREMY SCOTT MCCULLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Submitted without oral argument. Opinion filed June 28, 2024. Reversed, sentence vacated, and case remanded with directions.

*Bryan J. Brown*, of Topeka, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: Jeremy Scott McCulley appeals the district court's denial of his postsentencing motion to withdraw his plea. McCulley agreed to enter a plea of guilty to aggravated assault and misdemeanor battery based on the parties' mutual expectation that his criminal history score was C, which would have resulted in a presumptive probation sentence. However, based on the application of a special sentencing rule, K.S.A. 21-6811(a), three or more prior misdemeanors offenses were aggregated to count as a felony for criminal history purposes. After McCulley's plea hearing, the presentence investigation (PSI) report calculated a higher-than-expected criminal history score of B. At sentencing, the district court denied McCulley's motion for dispositional departure to

probation, which was the anticipated outcome at the time the parties entered the plea agreement. Due to the score of B, the court sentenced McCulley to a term of presumptive prison as required under the Kansas Sentencing Guidelines Act. The district court later denied McCulley's motion to withdraw his plea, finding McCulley's claims concerning his mistaken criminal history score during plea negotiations did not constitute manifest injustice. McCulley now appeals, claiming his plea counsel's ineffectiveness and the lack of a knowingly, intelligently, and voluntarily made agreement entitles him to withdraw his plea. For reasons we explain below, we agree McCulley should have been allowed to withdraw his plea.

FACTUAL AND PROCEDURAL HISTORY

In August 2020, the State charged McCulley with aggravated assault with a deadly weapon in violation of K.S.A. 21-5412(b)(1) and misdemeanor battery. The State later filed an amended complaint, changing the aggravated assault to a violation of K.S.A. 21-5412(b)(3). Following plea negotiations with the State, McCulley agreed to plead guilty to the amended charges. In exchange, the State agreed to dismiss all charges filed against McCulley in a separate criminal case. By amending the complaint to charge McCulley under K.S.A. 21-5412(b)(3) rather than (b)(1), the State removed the requirement that McCulley would have to register as a violent offender under the Kansas Offender Registration Act (KORA) after his conviction.

The written plea agreement specified that McCulley expected his criminal history score to be C, which would result in a presumptive probation sentence. The agreement did not, however, state that the parties agreed to a presumptive probation sentence. Instead, the agreement provided that the parties would jointly recommend "[t]he standard number in the applicable box on the Kansas Sentencing grid" for the aggravated assault and six months in jail for the battery. McCulley also made the following acknowledgment regarding his criminal history score and possible sentence:

2

"I understand the possible penalties I face as a result of my convictions in this case. I have been advised by my attorney of (1) the minimum and maximum terms of incarceration that I face for each count included in this plea agreement . . . .

"Unless I am entering a plea to an off-grid or non-grid felony, I understand that my sentence will be determined under the Kansas Sentencing Guidelines Act. My sentence will be determined based upon the severity level of the offense and my criminal history score. My criminal history score is a summation of all my prior criminal convictions and juvenile adjudications from within the State of Kansas and outside the State as well.

"I further understand that it is the Court's responsibility to determine an appropriate sentence within the Sentencing Guidelines Act and the law and whatever position taken by the District Attorney or by my attorney is not binding upon the Court.

"I understand and accept the risk that if I am mistaken about my criminal history I will be subject to the sentence that comes with my accurate criminal history score. I understand that a mistake in criminal history may subject me to a longer period of incarceration and a presumption of incarceration. I am willing to accept this risk and enter this plea in order to obtain the benefits offered by the State as part of the agreement."

At McCulley's plea hearing in March 2022, McCulley confirmed that he signed and understood the terms of the plea agreement. He also told the district court that he understood and waived several rights, including his right to a jury trial. Finally, after conferring briefly with his attorney, McCulley ultimately assured the district court he had no questions regarding his plea.

The district court appropriately advised McCulley of his rights and informed him of the possible punishments associated with an aggravated assault conviction under K.S.A. 21-5412(b)(3). The district court explained that this crime was "a level 7 person felony, punishable by up to between 11 to 34 months in prison, and 12 months post release supervision." The court then stated: "Apparently, . . . the attorneys are going to recommend the standard number with regard to the sentencing grid with count 1, and six

3

months in jail to run concurrent with count 1. Do you understand those are the attorneys' recommendations, but I'm not bound by them?" McCulley replied, "Yes, sir." The district court then accepted McCulley's plea as to both offenses and requested a factual basis for the crimes from the State.

The State provided the following facts to support McCulley's convictions:

"Your Honor, if the case were to go to trial, the State would call witnesses, including Lance Green of the Topeka Police Department, and John P. Tompkins. Mr. Tompkins and Officer Green would testify about events that took place on July 28, 2020, at 703 Northeast Twiss, which is in Shawnee County, Kansas.

"Mr. Tompkins would testify that he was at that address on July 28th when [McCulley] arrived . . . driving erratically, and [he] appeared to be angry. Mr. [Tompkins] got into an argument with the defendant. The defendant made threatening gestures and threatening comments, including saying that, 'He would put two caps into Mr. Tompkins right now,' calling him profane names and making threatening gestures. Mr. Tompkins would testify that this activity by the defendant placed him in apprehension of immediate bodily harm to himself.

"The evidence also would show that the defendant, Mr. McCulley, was later interviewed by law enforcement officers. He . . . admitted to going to the address and being angry, being in a yelling argument with the victim, and also admitted that at one point, he spit into Mr. Tompkins' face."

McCulley spoke with his attorney before agreeing that if this case proceeded to trial, the State could produce evidence to establish these facts beyond a reasonable doubt. The district court accepted the factual basis, found McCulley guilty, scheduled the matter for sentencing, and ordered a PSI report to determine the appropriate sentence.

Before the district court adjourned the plea hearing, defense counsel orally moved the court for modification of McCulley's bond to a $2,500 recognizance bond, with the expectation that the dismissal of his second criminal case would result in his release.

During the discussion of bond, the prosecutor explained that the State did not object to the modification because the parties expected that McCulley's sentence would be presumptive probation. The parties stated:

> "[PROSECUTOR:] *Your Honor, we'd expect the defendant's criminal history to place him in a presumptive probation category for this case.* So we are not objecting to bond modification.
>
> "THE COURT: Okay. So tell me what the sentencing agreement means. If the agreement is six months in jail to run concurrent with count 1, that doesn't contemplate probation on count 2.
>
> "[PROSECUTOR:] *We probably should have—what we negotiated was anticipating probation, and I believe the written document inadvertently left that out.*
>
> "[DEFENSE COUNSEL:] We may have—should have maybe put six months underlying, Your Honor. It was meant to just run concurrent with the presumed probation on the felony count.
>
> "THE COURT: Well, I think you guys probably need to do a better job of being more specific. Because the way I read that is, he was going to prison, hovering by a jail term. What was the suggested modification on the bond, Mr. Manly?
>
> "[PROSECUTOR:] I think she said 2500 OR.
>
> "THE COURT: All right. The defendant is to contact court services immediately on his release. Probably not yet today, but tomorrow. Get his presentence done. I'll do a bond slip to show he's released on $2,500 OR bond, to appear back in court on the 5th of May, 4:30 in the afternoon." (Emphases added.)

The district court ultimately granted McCulley's requests, dismissing his separate criminal case and modifying his bond.

Defense counsel received a copy of the PSI report about two or three weeks before the sentencing hearing scheduled for May 5th. Contrary to the parties' expectation that McCulley's criminal history score was C, the PSI report showed that McCulley's criminal history score was B. Defense counsel tried to contact McCulley about the PSI report

5

before sentencing. The phone number she had for McCulley did not work, so she did not show him the new information until the day of his sentencing hearing.

Defense counsel did not request a continuance, so McCulley appeared for sentencing as scheduled. Defense counsel raised the issue regarding the unexpected change to McCulley's criminal history score but did not lodge a formal objection to the score. Defense counsel filed a motion for dispositional departure, noting based on McCulley's PSI report his criminal history score was B and, thus, his presumed sentence was 27-31 months' imprisonment. McCulley asked the court to grant him the grace of a dispositional departure to probation based on a misunderstanding regarding his criminal history score. Defense counsel noted the PSI report did not reveal any additional felony offenses, other than those listed in the criminal history worksheet, and instead calculated a higher-than-expected criminal history score based on the statutory aggregation of multiple misdemeanor offenses.

The State opposed McCulley's motion for a departure, arguing it did not promise anything in the written agreement regarding a presumptive probation sentence. The State instead insisted that the parties merely agreed to recommend the standard term in the appropriate sentencing grid-box. The State also argued all defendants who enter into plea agreements inherently risk being sentenced according to a criminal history score different from the one they expect during plea negotiations.

After considering the parties' claims, the district court denied McCulley's motion. The district court found that McCulley acknowledged in the written plea agreement that his criminal history score might be different than expected. The district court also found that McCulley showed no "substantial and compelling reasons" to grant him a departure under the circumstances. The district court thus sentenced McCulley within the presumptive prison range applicable to his criminal history score of B. The district court deviated somewhat from the parties' agreement and sentenced McCulley to the mitigated

6

term of 27 months in prison with 12 months' postrelease supervision for the aggravated assault and 6 months in jail for the misdemeanor battery.

After announcing this sentence, the district court acknowledged that McCulley did not expect to receive a prison sentence when he arrived at the hearing and thus granted McCulley 15 days to get his affairs in order before reporting to the Department of Corrections to begin serving his sentence.

Around two weeks later, McCulley secured a different attorney to represent him and quickly filed a motion to withdraw his plea. In this motion, McCulley argued that he received ineffective assistance of counsel. He maintained he based his decision to enter his plea on the parties' misrepresentations regarding his criminal history score and possible sentence. McCulley thus claimed no one properly informed him of the consequences of his plea, so the plea was not knowingly and understandingly made.

McCulley's motion explained his previous attorney (plea counsel) used only a criminal history worksheet—filed during the early stages of his case—to calculate his criminal history score. He claimed that plea counsel never asked him to review the criminal worksheet and instead trusted that the worksheet provided an accurate list of his prior crimes. McCulley challenged plea counsel's decisions in this regard as unfounded, noting that the criminal history worksheet provided a handwritten list of only some of his previous offenses. The worksheet also failed to account for the crimes charged in this case and included information indicating that it may have been outdated and/or used in a different case. McCulley also asserted that plea counsel did not mention anything about aggregating misdemeanors or explain this statute or any sentencing rule that would affect his criminal history score and thus subject him to a presumptive prison sentence. He also alleged that plea counsel could have retrieved all information necessary to determine his accurate criminal history score simply by searching his name in the district court's records database online.

7

The district court held a hearing on McCulley's motion. McCulley testified and presented testimony from his plea counsel and the prosecuting attorney.

Plea counsel testified that during plea negotiations with the State, she believed that McCulley "was going to be criminal history 'C,' and . . . that that would put him in presumptive probation on the sentencing grid." She also testified that she did not think McCulley's plea agreement had any missing terms and confirmed that she and the district attorney both believed that McCulley would be sentenced based on a criminal history score of C. She explained that at the time, the parties did not complete pre-plea PSI reports, so McCulley's criminal history score was estimated using a criminal history worksheet. Plea counsel also explained that the criminal history worksheet was already a part of the record when she started working on McCulley's case, and she did not know who prepared or filed the worksheet.

Plea counsel also explained the typical method that she and other attorneys in her office used to calculate a defendant's criminal history score for plea negotiation purposes:

> "We usually take a look at what those listed are on the criminal history worksheet. If it's here in Kansas, I don't generally have to look up . . . statutes to determine if it's a person or nonperson crime because I would generally know that at this point. So we look at that worksheet, see how many misdemeanors or felonies may be on there, and [the prosecutor] and I came to the same conclusion, that we believed it was 'C.'"

She also testified that she never encountered the type of calculation error that occurred here and believed there were "mistakes all around." There is no testimony from plea counsel that establishes she understood the special rule on aggregation of prior misdemeanors under K.S.A. 21-6811(a) could apply to McCulley's criminal history calculation. Similarly, she did not testify she provided McCulley with any information or

8

explanation that, under K.S.A. 21-6811(a), his prior misdemeanors could be aggregated to count as a felony for criminal history purposes.

Plea counsel testified that she told McCulley to review the plea agreement and to ask her any questions that he had after reviewing it. She did not remember, however, if McCulley asked any questions before signing the agreement. She also confirmed she told McCulley that his score was C before he entered his plea but provided no testimony showing she discussed or reviewed the criminal history worksheet with McCulley before calculating his criminal history score. Plea counsel also admitted that she received the PSI report more than two weeks before sentencing but did not inform McCulley of the criminal history score issue until the day of his sentencing hearing. She also explained that she tried to call McCulley to discuss the situation earlier, but the phone number that she used to reach him did not work.

The prosecutor testified that McCulley entered his plea pursuant to a "long form" plea agreement and that he did not believe the written agreement had any errors. He explained that he discussed McCulley's criminal history score with plea counsel and agreed that McCulley's criminal history score was C. He also admitted that the written agreement "'probably should have [shown that] what we negotiated was anticipating probation . . . [but that] document inadvertently left that out.'" Still, the prosecutor maintained that he did not agree to include a recommended term of probation in the written agreement. He instead clarified that he "agreed to an expectation of a criminal history score" and promised to jointly recommend the "standard number" of months associated with McCulley's accurate criminal history score.

The prosecutor also acknowledged that he did not object to McCulley's request for bond modification at the plea hearing because the parties expected McCulley's criminal history score to place him in a presumptive probation category for sentencing. Additionally, the prosecutor testified that a PSI report had not yet been completed when

9

he was assigned to McCulley's case, and because he was not the prosecutor initially assigned, he did not "dig into criminal history" and instead relied on a note from a previous prosecutor regarding the expected criminal history score.

In his testimony, McCulley explained that based on his discussions with plea counsel, he believed that the district court would sentence him to 27 months in prison but grant him 2 years of probation. He also explained that he was "shocked" when the district court ordered a different sentence at the sentencing hearing. McCulley testified that he did not know that his previous misdemeanor offenses could be "'aggregated'" and thus considered felonies for sentencing purposes before entering plea negotiations with the State. He also claimed that had he known that he would be required to serve a prison sentence, he would have pursued his right to trial to prove his innocence. He argued that a transcript of a previous proceeding, presumably the preliminary hearing, "prove[d]" his innocence. He also claimed that he was prepared to defend himself against the charges that the State dismissed in his separate criminal case as a part of the plea agreement. Alternatively, McCulley asked the district court to keep his plea in place but resentence him to a term of probation.

McCulley also admitted that he signed and reviewed the plea agreement and that the agreement specifically stated that he would receive "[t]he standard number in the applicable box" for his felony offense. He also acknowledged that the agreement did not specifically state that he would receive a probation sentence and that he read and initialed the following term: "I further understand that it is the Court's responsibility to determine an appropriate sentence within the Sentencing Guidelines Act and . . . the law, and whatever position taken by the District Attorney or by my attorney is not binding upon the Court." The district court also asked McCulley additional questions regarding his understanding of the plea agreement:

10

"THE COURT: Mr. McCulley, in the plea agreement, it says, 'I understand that a mistake in criminal history may subject me to a longer period of incarceration and a presumption of incarceration. I am willing to accept this risk and enter this plea in order to obtain the benefits offered by the State as part of this agreement.'

"At the plea, I asked you if you'd read that and you told me you had. Had you read that?

"[DEFENDANT]: Yes, Your Honor.

"THE COURT: I asked you if you understood it. Did you understand that?

"[DEFENDANT]: Apparently, I did not. Because I thought . . . by agreeing that I understood it was that, that—actually, I don't know what I thought. Because I thought it meant that I was going to get what I agreed to with the State as a sentence, which was 24 months probation with 27-month underlying prison sentence. That's what I thought. That's what I thought it meant, that that was what I was agreeing to."

Additionally, McCulley argued that he was not personally mistaken about his criminal history score and instead relied on the information that he received from the prosecutor and plea counsel. Based on this, McCulley requested that the district court allow him to withdraw his plea or resentence him to probation.

The district court took the matter under advisement but eventually denied McCulley's motion. The district court's findings focused on the advisories provided to McCulley in the written plea agreement and by the court itself at the plea hearing. In this regard, the district court found that the agreement warned McCulley that the court would decide his criminal history score and sentence as required by the Kansas Sentencing Guidelines Act. The district court and the plea agreement also explained that the district court was the sole authority on McCulley's criminal history score. The district court also found that by signing the plea agreement and initialing each of its provisions, McCulley acknowledged and accepted the inherent risk associated with taking such a plea and the possibility that his sentence might differ from the sentence that he expected. The district court also found that defense counsel calculated McCulley's criminal history score using

11

"her best estimate." Also, McCulley benefitted from the agreement because the State dismissed a separate criminal case, which charged McCulley with a level 5 drug felony.

McCulley initially appealed his sentence to this court on the same date that he filed his motion to withdraw his plea in the district court. After the district court entered its ruling on McCulley's motion, McCulley asked this court for permission to docket his appeal out of time. Because McCulley filed his notice of appeal before the district court made its decision on his motion, this court issued a show cause order to address the untimeliness of McCulley's appeal. The case was remanded to the district court for an *Ortiz* hearing to determine whether an exception applied to McCulley's untimely appeal. The district court found that such an exception applied and thus authorized this appeal. The district court also granted McCulley an appeal bond, allowing McCulley to avoid incarceration pending this court's decision.

ANALYSIS

Appellate courts review a district court's decision on a motion to withdraw a plea for an abuse of discretion. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). "A district court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact." *State v. Moore*, 302 Kan. 685, 692, 357 P.3d 275 (2015).

When deciding a defendant's motion to withdraw their plea, district courts generally consider the following three factors, commonly referred to as the *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Bilbrey*, 317 Kan. 57, 62, 523 P.3d 1078 (2023). "A plea of guilty or [no contest], for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged."

12

K.S.A. 22-3210(d)(1). "Merely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for *presentence* withdrawal of a plea." (Emphasis added.) *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). But when, as here, a defendant files a postsentence motion to withdraw their plea, the defendant must meet a heightened standard of establishing "manifest injustice." See *Bilbrey*, 317 Kan. at 62; K.S.A. 22-3210(d)(2) ("To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."). Manifest injustice exists when an outcome is "obviously unfair or shocking to the conscience." *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43 (2021).

The *Edgar* factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). It also is important that a defendant must be made aware of the consequences of a plea. *State v. Moses*, 280 Kan. 939, 948-49, 127 P.3d 330 (2006).

The central issue that McCulley raises on appeal is that he incorrectly believed that he would receive a presumptive probation sentence based on what he was told by plea counsel and the prosecutor's misrepresentations regarding his criminal history score. McCulley argues he did not know the consequences of his plea because no one had explained the sentencing rule for aggregating misdemeanors. In calculating a person's criminal history score, special sentencing rules may apply in addition to the general criminal history categories contained in the sentencing guidelines grids. Relevant here, K.S.A. 21-6811(a) provides:

> "Every three prior adult convictions or juvenile adjudications of class A and class
> B person misdemeanors in the offender's criminal history, or any combination thereof,

shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes."

These convictions include any municipal ordinance violations comparable to class A and class B adult person misdemeanors. *State v. Russ*, No. 115,111, 2017 WL 1821215, at \*2 (Kan. App. 2017), *aff'd* 309 Kan. 1240, 443 P.3d 1060 (2019).

Regarding the competency of his counsel, McCulley claims plea counsel was ineffective for failing to properly calculate his criminal history score and failing to promptly notify him of her calculating error. He asserts that because she first informed him of the error on the same day as his sentencing hearing and failed to request a continuance, she precluded him from filing a presentencing challenge to his criminal history score or plea. McCulley also challenges the State's actions as "objectively unreasonable," including its alleged misrepresentation regarding his criminal history score and failure to draft a clearer written agreement. He also claims he agreed to the guilty plea based on the parties' mutual mistake regarding his criminal history score. Finally, McCulley alleges he was denied his right to due process based on plea counsel's ineffective performance and because the State's vague plea agreement prevented him from entering a knowingly and understandingly made plea.

*Preservation & Other Preliminary Considerations*

The State argues that some of McCulley's claims should be dismissed as unpreserved. Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before this court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). There are several exceptions to these general rules, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the

district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). The decision to review an unpreserved claim under an exception is a prudential one. *State v. Jones*, 313 Kan. 917, 933, 492 P.3d 433 (2021); *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) ("Even if an exception would support a decision to review a new claim, we have no obligation to do so.").

The State first claims McCulley's arguments regarding plea counsel's failure to file an objection to his criminal history score or request a continuance for the sentencing hearing should be dismissed. The State suggests McCulley focused his arguments regarding plea counsel's performance on her inadequate or otherwise flawed method of estimating his criminal history score and the reliance that she caused him to have on the incorrect score. However, McCulley also argued in his motion that plea counsel's performance prevented him from resolving this matter before sentencing. McCulley elicited testimony related to this issue at the motion hearing, including plea counsel's testimony admitting that she did not show McCulley the PSI report until the day of his sentencing hearing. We find these matters are properly preserved for appellate review.

The State also asserts that McCulley's due process claim is unpreserved. We note that, in his appellate reply brief, McCulley refutes this by citing to the general due process claims that he raised before the district court. We find this issue is also preserved for appellate review.

A final preliminary matter relates to the sufficiency of the record that McCulley designates on appeal. Again, plea counsel relied on a criminal history worksheet to calculate McCulley's criminal history score, and the worksheet is part of the record on appeal. However, the PSI report—which ultimately showed that McCulley's criminal history score was B rather than C—is not included in the record. While testimony at the plea hearing establishes the PSI report did not reveal any additional felony offenses and that the change in the criminal history score was due to the statutory aggregation of

15

multiple misdemeanors, it is unclear from the information available to this court what crimes the PSI report listed in addition to those listed in the criminal history worksheet. The criminal history worksheet provides a list of offenses, but it is handwritten and does not clearly describe or classify the offenses.

As the appellant, it is McCulley's burden to designate a record sufficient to present his arguments to this court and establish error. See *State v. Liles*, 313 Kan. 772, 783-84, 490 P.3d 1206 (2021); Supreme Court Rule 6.02(a)(4) (2024 Kan. S. Ct. R. at 36). Although the PSI report would undoubtedly allow this court to better review McCulley's appellate claims, we find we are able to decide this appeal based on a review of the record provided.

*Ineffective Assistance of Counsel*

An ineffective assistance of counsel claim contains mixed questions of fact and law, and an appellate court "reviews the underlying factual findings for substantial competent evidence and the legal conclusions based on those facts de novo." *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009). McCulley's claim alleging ineffective assistance of counsel must meet the constitutional test for ineffective assistance from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). So, this court must consider: (1) whether his trial counsel's representation fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for the alleged errors of trial counsel, the result of the proceeding would have been different. *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022). McCulley must show that but for the deficient performance of counsel, he would not have entered his plea and would have instead insisted on going to trial. *State v. Morris*, 298 Kan. 1091, 1103-04, 319 P.3d 539 (2014).

16

To provide reasonable representation to a defendant in plea negotiations, "defense counsel has an obligation to advise the defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant." *State v. White*, 289 Kan. 279, Syl. ¶ 5, 211 P.3d 805 (2009). Defense counsel need not advise a client of all consequences arising from a plea but does have an obligation to discuss with a criminal defendant the immediate consequences of entering a plea. See *State v. Moody*, 282 Kan. 181, 194-95, 144 P.3d 612 (2006). At a minimum, these consequences include the maximum criminal exposure the defendant can expect within defense counsel's knowledge. See *White*, 289 Kan. at 287. Additionally,

> "[b]oth the prosecutor and defense counsel have certain obligations in plea bargaining. It is improper for the prosecutor to induce a guilty plea by misrepresentations of the law or by unfulfillable promises. Likewise, the defense counsel is obligated to fully and frankly advise his client as to the range of permissible penalties and the possible choices open to him. Failure to fulfill these obligations can have a significant effect on the voluntariness of an accused's guilty plea. [Citations omitted.]" *Morrow v. State*, 219 Kan. 442, 445-46, 548 P.2d 727 (1976).

McCulley does not reference any legal authority which is directly on point to support his argument that plea counsel may be found ineffective for failing to properly investigate and/or calculate a criminal history score. And some appellate rulings directly contradict this claim. For example, in *State v. Stephens*, 46 Kan. App. 2d 853, 855-56, 265 P.3d 574 (2011), *rev. denied* 294 Kan. 947 (2012), this court rejected the argument that plea counsel may be ineffective for failing to independently investigate a defendant's criminal history, finding no Kansas authority imposes such a duty. An important difference to note in *Stephens* is that plea counsel in that case testified that he relied on the information that the defendant provided him regarding the defendant's previous crimes to calculate the defendant's criminal history score. The defendant, however, failed to disclose several out-of-state misdemeanor convictions. Based on this, the *Stephens* panel found that plea counsel erred in estimating the defendant's criminal history score

17

but did not fault the attorney's efforts as objectively unreasonable when considering the first *Edgar* factor. See *Stephens*, 46 Kan. App. 2d at 855-56. The record here does not indicate that plea counsel relied on any information from McCulley to calculate McCulley's criminal history score.

Our appellate courts have also held that a mere inaccurate prediction regarding prospective sentencing does not alone constitute ineffective assistance of counsel. See *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 407 (1995); but see *State v. Schow*, 287 Kan. 529, 544, 197 P.3d 825 (2008) (holding a miscalculated score alone does not justify plea withdrawal but a miscalculation based on plea counsel's "failure to know or to apply the current sentencing guidelines" may implicate the first *Edgar* factor). Additionally, "the fact that a defendant did not have full knowledge of his or her criminal history score when pleading guilty does not render a plea involuntary. See *State v. Haskins*, 262 Kan. 728, 731-32, 942 P.2d 16 (1997)." *State v. Tallchief*, No. 90,373, 2004 WL 324410, at *1 (Kan. App.) (unpublished opinion), *rev. denied* 278 Kan. 851 (2004). This court has also found that "under Kansas law, a defendant is presumed to have known his or her criminal history when he or she entered into the plea agreement." *State v. Nelson*, No. 105,250, 2012 WL 402005, at *2 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1134 (2013).

The district court correctly found that although the plea agreement noted McCulley's expected criminal history score, the agreement did not assure McCulley that the score was accurate or that he would receive a presumptive probation sentence. The agreement specifically warned McCulley of possible changes to his criminal history score and resulting sentence. The plea agreement and the district court also warned McCulley of the maximum penalty associated with his felony offense. Ultimately, the district court reasoned plea counsel had provided McCulley adequate legal assistance under these circumstances. Cf. *White*, 289 Kan. 279, Syl. ¶ 8 (finding the statutory rule requiring notice of the maximum possible penalties may be met even if the written plea agreement

18

and plea counsel fail to inform the defendant but the district court provides the information during the plea colloquy).

Our appellate courts typically affirm district court rulings on postsentencing motions to withdraw pleas that are supported by similar factual and legal findings as the district court made here. See, e.g., *State v. Haskins*, 262 Kan. 728, 731-32, 942 P.2d 16 (1997) (rejecting an argument that defendant's request to withdraw plea should have been granted because counsel was ineffective for incorrectly estimating defendant's criminal history score); *Waliallah v. State*, No. 121,787, 2021 WL 520697, at *7-8 (Kan. App.) (unpublished opinion), *rev. denied* 314 Kan. 859 (2021); *State v. Vontress*, No. 91,696, 2005 WL 742064 (Kan. App.) (applying *Haskins* and similarly rejecting appellant's claim), *rev. denied* 280 Kan. 991 (2005). This trend may be partly attributable to the standard of review that this court must apply when considering these types of appeals.

Even under this standard of review, however, we find the circumstances surrounding McCulley's appeal cause this case to be distinguishable. The record raises several questions about plea counsel's performance, including whether she talked to McCulley about his prior crimes and whether she knew about the misdemeanor stacking rule or if she knew the special rule applied to McCulley's criminal history score. Cf. *Schow*, 287 Kan. at 543-44 (finding several unanswered questions regarding plea counsel's performance during plea proceedings, including whether plea counsel provided an incorrect estimate of Schow's criminal history score because she did not know to aggregate Schow's prior misdemeanors, required additional consideration on remand); *State v. Brown*, No. 97,812, 2008 WL 2369823, at *4-7 (Kan. App. 2008) (unpublished opinion) (Leben, J., dissenting) (emphasizing the lack of clarity in the record regarding defense counsel's specific discussions with the defendant and whether the attorney remembered that the aggregating misdemeanors rule would affect the defendant's criminal history score), *rev. denied* Nov. 4, 2008.

In some cases where this court has agreed with the district court that plea counsel was not ineffective for failing to accurately estimate the defendant's criminal history score, the records show that plea counsel at least consulted the defendant about their criminal history. Plea counsel also specifically relied on the information provided by the defendants regarding their prior crimes in those cases. See, e.g., *Stephens*, 46 Kan. App. 2d at 855-56 (rejecting defendant's claim plea counsel committed reversible error by miscalculating his criminal history because plea counsel knew generally defendant committed prior crimes in Colorado and should have investigated further); *Brown*, 2008 WL 2369823, at *3 (finding manifest injustice did not exist to allow plea withdrawal where plea counsel did not explain the aggregating misdemeanors rule because defendant did not tell plea counsel she had any prior misdemeanor convictions); *Tallchief*, 2004 WL 324410, at *2 (finding no reversible error in plea counsel's incorrect criminal history calculation where plea counsel relied on defendant's false assurance he did not have a criminal history score).

McCulley's plea counsel, however, testified that she and the prosecutor calculated McCulley's criminal history score using only the criminal history worksheet. Plea counsel also admitted that she did not know who filed this worksheet, and McCulley claims plea counsel did not ask him to review the worksheet to ensure its accuracy. Plea counsel also told McCulley that his score was C based on her calculation, but nothing in the record shows she asked McCulley about his previous crimes. Plea counsel also could not remember if she explained to McCulley that the district court maintained sole authority over his criminal history score and resulting sentence determinations but knew that the plea agreement provided such a warning.

In another similar and recently decided case, this court considered the timing of plea counsel's attempts to correct their error of providing an incorrect criminal history score to the defendant during plea negotiations. See *Caddell v. State*, No. 126,076, 2024 WL 1695013, at *5 (Kan. App. 2024) (unpublished opinion). There, the court noted to

20

warrant relief, Caddell was required to identify some evidence demonstrating the substance or existence of information that was lacking in counsel's investigation leading up to the pleas. Because plea counsel informed Caddell that his criminal history score was different than previously expected before he entered his guilty plea, Caddell failed to carry his burden to show that deficient performance by his counsel affected his decision to plead guilty. 2024 WL 1695013, at *5. Here, however, McCulley first learned of plea counsel's calculating error after he made his decision to plead guilty, just shortly before his sentencing hearing.

Another case worth comparing is *State v. Cook*, No. 119,925, 2019 WL 4230105 (Kan. App. 2019) (unpublished opinion). This court affirmed the district court in *Cook* based in part on its finding that plea counsel's miscalculation did not negatively impact the defendant under specific circumstances. Cook received a lower criminal history score than plea counsel predicted, and this ultimately resulted in Cook receiving a lower overall sentence. Also, neither of Cook's criminal history scores placed him in a presumptive probation grid-box for sentencing; either score subjected him to presumptive prison sentences. 2019 WL 4230105, at *3-4.

McCulley also asks us to consider *Schow* in support of his argument. Like McCulley, Schow sought to withdraw his plea before sentencing based on a mutual mistake concerning his criminal history score. Schow also pleaded guilty to a level 9 felony after his plea counsel advised him that his criminal history score was D. The State agreed in *Schow* to recommend probation at sentencing. At the plea hearing, the district court advised Schow of the minimum and maximum months of incarceration associated with his crime, generally. And after plea counsel advised the district court that Schow's criminal history score was D, the district court explained that if correct, Schow's criminal history score put Schow in a presumptive probation sentencing grid box. 287 Kan. at 531-32.

21

A PSI report completed after Schow entered his plea, but before sentencing, established that Schow's criminal history score was B, rather than D, because three prior person misdemeanors were converted to a person felony. Schow moved to withdraw his plea before sentencing. After a hearing on this motion, the district court explicitly found both parties entered the plea agreement with the idea and expectation Schow's criminal history score was D and Schow would receive probation. Still, the district court denied Schow's motion, ruling as a matter of law that a mutual mistake about criminal history was not good cause to withdraw a plea. 287 Kan. at 532-33.

On appeal, our Supreme Court reversed the district court's decision, vacated Schow's sentence, and remanded the case for additional proceedings. The *Schow* court found that the good-cause burden for a presentence motion to withdraw a plea is not met merely by declaring that the parties were mutually mistaken about the defendant's criminal history score. However, it stated the district court may consider the circumstances leading to the mutual mistake when they implicate the *Edgar* factors. *Schow*, 287 Kan. at 541-46. It also noted when a defendant challenges an incorrect criminal history score as being the result of counsel's "failure to know or to apply the current sentencing guidelines," the circumstances likely implicate the first *Edgar* factor. *Schow*, 287 Kan. at 544; see *State v. McKinzy*, No. 121,464, 2021 WL 4496098, at *3-5 (Kan. App. 2021) (unpublished opinion) (applying *Schow* and finding that plea counsel did not merely miscalculate the defendant's criminal history score when they did not know about or inform the defendant of an important sentencing rule that requires multiple convictions that are obtained on the same day in different cases to count against each other).

> "Where a defendant has not had competent counsel, or where a defendant has been misled, coerced, mistreated, or unfairly taken advantage of, or where a defendant's plea has not been fairly and understandingly made, one would have to characterize the resultant plea as 'unintelligently made.' In that event, there is indeed recourse for the

unintelligently made plea; the district court can and ordinarily should grant the motion to withdraw plea pursuant to K.S.A. 22-3210(d)." *Schow*, 287 Kan. at 543.

As in *Schow*, the parties discussed McCulley's anticipated criminal history score during plea negotiations, and plea counsel admitted this at the motion hearing. And the transcript of McCulley's plea hearing likewise shows that the State previously discussed and agreed that McCulley's criminal history score was C. The State's comments also showed that the State anticipated that McCulley would receive a presumptive probation sentence. Based on somewhat similar discussions in *Schow*, our Supreme Court found it insignificant that the district court advised Schow of the absolute maximum sentence which could be imposed if Schow's criminal history score were A because there had been a specific discussion of Schow having a criminal history score of D. 287 Kan. at 545. Therefore, we find it appropriate to limit our consideration of the district court's penalty advisory here.

However, unlike in *Schow*, the district court found McCulley received warnings in the plea agreement that his criminal history score might change. The district court also found that McCulley was not given any assurances about his criminal history score, and the State agreed only that it would recommend an appropriate sentence based on McCulley's accurate criminal history score. Cf. *State v. Stubby*, No. 122,872, 2021 WL 2754001, at *2-3 (Kan. App. 2021) (unpublished opinion) (distinguishing *Schow* and finding a lack of on-record discussions regarding Stubby's criminal history score, lack of assurances in plea agreement regarding Stubby's score, and lack of testimony from Stubby that the "attorney failed to explain to him that the conversion of his person misdemeanor convictions—that he was continuing to accumulate—would affect his criminal history score" established that reversal was not merited); but cf. *McKinzy*, 2021 WL 4496098, at *4-5 (applying *Schow* and remanding for additional plea proceedings

where the district court did not consider the attorney's admission of incompetence in not knowing or discussing an important sentencing rule during plea proceedings).

After careful review, however, we find the circumstances surrounding McCulley's plea show reversal is warranted based on *State v. Kasa*, No. 119,430, 2019 WL 3978563 (Kan. App. 2019) (unpublished opinion). In *Kasa*, plea counsel failed to inform the defendant about the potential effect or applicability of a special sentencing rule, the persistent sex offender rule under K.S.A. 2018 Supp. 21-6804(j)(2)(A). The district court considered the *Edgar* factors and determined that the defendant was represented by competent counsel. *Kasa*, 2019 WL 3978563, at *4-5. On appeal, this court disagreed, finding the district court did not consider plea counsel's actual performance, i.e., counsel's failure to discuss the special aggravating sentencing rule with the defendant when addressing the first *Edgar* factor:

> "The district court found Kasa had competent plea counsel. However, from a review of the record, the district court did not consider how plea counsel's failure to advise Kasa of the persistent sex offender sentencing rule impacted his ability to enter a knowing, understanding, and voluntary plea. Contrary to the district court's finding, we conclude plea counsel's ignorance of the applicability of the persistent sex offender sentencing rule and failure to advise Kasa of its impact on his possible sentence fell below the reasonable standard of professionalism expected by clients accused of sex crimes during plea negotiations." *Kasa*, 2019 WL 3978563, at *5.

Based on a review of the record, the *Kasa* panel found plea counsel's representation was ineffective and ultimately reversed the district court's denial of Kasa's motion to withdraw his plea. 2019 WL 3978563, at *5-6.

Because the PSI report is not included in the record on appeal, it is unclear what specific misdemeanor convictions the PSI report converted to determine McCulley's criminal history score. However, it is undisputed by the parties on appeal that the PSI

24

report calculated the higher criminal history score by aggregating several misdemeanor convictions that were not listed in the criminal history worksheet.

Under K.S.A. 21-6811(a), certain misdemeanor convictions can be aggregated into a person felony for purposes of determining a defendant's criminal history score:

> "Every three prior adult convictions or juvenile adjudications of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes. Every three prior adult convictions or juvenile adjudications of assault as defined in K.S.A. 21-3408, prior to its repeal, or K.S.A. 21-5412(a), and amendments thereto, occurring within a period commencing three years prior to the date of conviction for the current crime of conviction shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes."

McCulley tacitly concedes that the PSI report properly applied the aggregating misdemeanors rule under K.S.A. 21-6811(a) to calculate his score. It is undisputed, however, that plea counsel told McCulley that his expected criminal history score was C. McCulley had been consistently advised through the time of the plea hearing that his expected criminal history score was C with an anticipated result of probation, despite the written warnings in the plea agreement that the score might change. As noted in *Schow*, our Supreme Court found it insignificant that the district court had advised Schow of the absolute maximum sentence which could be imposed if Schow's criminal history score was A because there had been a specific discussion of Schow having a criminal history score of D. 287 Kan. at 545.

And, according to McCulley's uncontroverted testimony, plea counsel did not discuss aggregation of prior misdemeanors under K.S.A. 21-6811(a). McCulley claims that plea counsel's misrepresentation caused him to firmly believe that his score was C. Additionally, McCulley argued in the district court that plea counsel never discussed his

25

criminal history with him or asked him to review the criminal history worksheet. Nothing in the record refutes this allegation.

While the district court found plea counsel's performance was not deficient, it did not consider plea counsel's failure to discuss McCulley's criminal history or her failure to explain to McCulley the applicability of the special sentencing rule or how the lack of understanding as to the aggregating misdemeanors would impact his ability to enter a knowingly, understandingly, and voluntarily made plea.

In plea negotiations, defense counsel is obligated to fully and frankly advise his or her client as to the range of permissible penalties and possible choices open to him or her. Failure to fulfil counsel's obligations can have a significant impact on the voluntariness of an accused's guilty plea. *Morrow v. State,* 219 Kan. 442, 445-46, 548 P.2d 727 (1976). Contrary to the district court's finding, we conclude plea counsel's unawareness of the applicability of K.S.A. 21-6811(a) to McCulley's prior misdemeanors, combined with her failure to advise McCulley of the ultimate impact on his sentence did not meet the reasonable standard of professionalism expected during plea negotiations. Because we find the district court failed to properly consider the first *Edgar* factor, we must remand the issue for additional consideration.

*Prejudicial Effect of Counsel's Performance*

McCulley has successfully challenged plea counsel's performance as deficient, but he must also show that he likely would have requested a trial if not for his counsel's deficient performance. See *State v. Johnson*, 307 Kan. 436, 447, 410 P.3d 913 (2018).

At the hearing on the motion to withdraw his plea, McCulley testified he previously read and understood the warnings and waivers provided in the plea agreement and by the district court. Nevertheless, McCulley maintained that he wanted to withdraw

26

his plea and that he would not have entered it had he known that his criminal history score would subject him to a presumptive prison sentence. Other evidence presented at McCulley's plea hearing also shows the State discussed McCulley's criminal history score during plea negotiations and similarly acted with the expectation that McCulley would receive a presumptive probation sentence. In this regard, the State told the district court at the plea hearing that it did not oppose McCulley's request for a modification to his bond because the State expected that McCulley would be sentenced according to a criminal history score of C.

McCulley testified that he would have pursued his right to a trial because the district court's record already included evidence of his innocence. He also claimed that he did not commit the felony drug offense that the State dismissed in his separate criminal case. McCulley claimed that he would rather go to trial and face additional charges than allow his plea to stand and serve his 27-month prison sentence. This testimony was largely uncontroverted by the State. Nothing in the record tends to controvert McCulley's claim there was a reasonable probability he would not have entered into his plea agreement had he been informed about the special aggregating sentencing rule.

Therefore, having concluded plea counsel's deficient representation prejudiced McCulley, we also conclude that counsel's deficient performance prejudiced McCulley. He establishes that there was a reasonable probability that he would not have entered into the plea agreement had he been informed about the sentencing rules that ultimately affected his criminal history score and subjected him to a prison sentence. Cf. *Kasa*, 2019 WL 3978563, at *5 (finding prejudice based on Kasa's largely uncontroverted testimony stating he understood his decision to withdraw plea would nullify benefits he gained from plea agreement and allow the State to file additional charges but still maintaining he wanted to withdraw his plea because he was unaware of persistent sex offender sentencing rule).

27

*Misleading Information & Mutual Mistake*

McCulley also claims the parties' mutual mistake about his criminal history score provides a basis to withdraw his plea. A review of the record establishes that, at the time the plea agreement was entered, neither plea counsel nor the prosecutor were aware of McCulley's criminal history or that the special aggregating sentencing rule applied. The Kansas Supreme Court stated in *Schow*, "While we would agree that a defendant should not get relief from a plea decision simply because he or she determines, in hindsight, that it was not the most intelligent course of action, that was not the argument put forth in [*State v. Ford*, 23 Kan. App. 2d 248, 930 P.2d 1089 (1996), *rev. denied* 261 Kan. 1087 (1997)]." *Schow*, 287 Kan. at 542. Rather, the court found the argument put forth was that the defendant had made his plea based on misinformation from the State, and the plea was not "'fairly and knowingly made.'" 287 Kan. at 542. The court recognized certain instances of mutual mistake such as these could implicate the *Edgar* factors. "Where a defendant has not had competent counsel, or where a defendant has been misled, coerced, mistreated, or unfairly taken advantage of, or where a defendant's plea has not been fairly and understandingly made, one would have to characterize the resultant plea as 'unintelligently made.'" *Schow*, 287 Kan. at 543. The court indicated in these circumstances a district court should ordinarily grant a defendant's motion to withdraw plea. "In that event, there is indeed recourse for the unintelligently made plea; the district court can and ordinarily should grant the motion to withdraw plea pursuant to K.S.A. 22-3210(d)." 287 Kan. at 543; see also *State v. Garcia*, 295 Kan. 53, 65-66, 283 P.3d 165 (2012) (Rosen, J., concurring) ("Without an accurate criminal history score calculated before the plea is accepted, the district court cannot properly inform the defendant of the maximum penalty provided by law. To accept the entire range provided by the sentencing guidelines as the 'maximum penalty provided by law' is to ignore the reality of the situation."); *Kasa*, 2019 WL 3978563, at *5 (finding defendant was misled into entering a plea because the prosecutor and plea counsel incorrectly assured the defendant and

district court that a special sentencing rule did not apply but the PSI report later showed that the persistent sex offender rule applied).

The parties made a mutual mistake about McCulley's criminal history score. He received advice of counsel that he would be eligible for probation, he pleaded guilty with that understanding, and he did not find out until the day of sentencing that his criminal history was not as expected and that his sentence would be prison rather than probation as anticipated. Under these circumstances, we believe the parties' mutual mistake should be considered along with the other circumstances to determine whether manifest injustice or other reversible error occurred.

*Due Process and Entering a Knowingly and Understandingly Made Plea*

McCulley claims because his attorney failed to explain the possibility of misdemeanor stacking, she failed to adequately inform him of the consequences of his plea. McCulley correctly asserts that any waiver of his rights and entry of his plea needed to be done freely, knowingly, and voluntarily.

> "'The question of whether a plea is understandingly made must be weighed in light of certain constitutional and statutory requirements which attach to a defendant's plea. United States constitutional due process requirements relating to pleas of guilty or nolo contendere were imposed upon the States in *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). To be constitutionally valid, guilty pleas and their resulting waiver of rights "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." [Citation omitted.]' *Edgar*, 281 Kan. at 36-37." *State v. Adams*, 311 Kan. 569, 575, 465 P.3d 176 (2020).

The law requires a judge who accepts a felony guilty or no contest plea to inform the defendant of the consequences of the plea, including the maximum possible penalties

for the crimes contained in the plea. K.S.A. 22-3210(a)(2). If the district court fails to properly inform the defendant, this error can be considered harmless and the plea can still be valid if the purpose of the statute is met in another manner, that is, if the defendant is properly informed through the written plea agreement, plea counsel, or in some other way. Conversely, if the written plea agreement or plea counsel fails to inform the defendant of the consequences of the plea, that failure can be cured by the district court through the plea colloquy. *White*, 289 Kan. at 287.

The record shows the district court followed the proper procedures and gave McCulley warnings regarding the consequences of his plea. The district court considered the circumstances before finding McCulley understood the consequences of his plea and freely, knowingly, and voluntarily waived his rights before entering his plea. The district court properly found that McCulley signed the plea agreement and initialed each of its provisions, including the provision warning McCulley of possible changes to his expected criminal history score. The district court and the plea agreement advised McCulley that the district court would make the final determination regarding his criminal history score.

It is undisputed that at the time he entered his plea, however, McCulley was unaware of the special sentencing rule under K.S.A. 21-6811(a) or its impact on his criminal history score and ultimately his sentence. Neither McCulley's plea counsel nor the district court advised him of the potential application of the misdemeanor stacking rule. Also, although the district court informed McCulley of the possible punishments associated with an aggravated assault conviction under K.S.A. 21-5412(b)(3), including the potential maximum sentence range, both parties expected McCulley's criminal history score would place him in a presumptive probation category. No one gave McCulley any information to disabuse him of that belief. If a defendant's plea has not been fairly and understandingly entered, the resultant plea may be characterized as "unintelligently made." *Kasa*, 2019 WL 3978563, at *6 (finding undisputed fact that defendant was not

30

made aware of the application of the persistent sex offender sentencing rule and its effect on defendant's criminal history score established that defendant's plea was not fairly and understandingly made).

We find that because McCulley was not informed of the application of the misdemeanor stacking rule under K.S.A. 21-6811(a), or its impact on his criminal history score and sentence, his plea was not fairly and understandingly made. Thus, he has established sufficient manifest injustice to justify the withdrawal of his plea.

We reverse the order denying McCulley's motion to withdraw guilty plea, vacate his sentences, and remand the case for further proceedings consistent with this opinion.

Reversed, sentence vacated, and case remanded with directions.